STATE of Missouri, Respondent,

v.

Gregory JIMERSON, Appellant.

Gregory JIMERSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 41799.

Missouri Court of Appeals,
Western District.

Sept. 10, 1991.

Application to Transfer Denied
Jan. 28, 1992.

David S. Durbin, Appellate Defender, Susan L. Hogan, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT and WASSERSTROM, Senior Judges and TURNAGE and GAITAN *, JJ., concur.

NUGENT, Senior Judge.

In these consolidated appeals Gregory Jimerson, a penitentiary inmate, appeals his conviction for offering violence to a corrections officer and the denial of his Rule 29.15 motion. A jury convicted Mr. Jimerson of offering violence to a corrections officer, in violation of § 217.385,[1] and the trial court sentenced him as a prior and persistent offender to three years in prison. Thereafter, another judge afforded Mr. Jimerson an evidentiary hearing on his Rule 29.15 motion for post conviction relief and then denied the motion. We affirm the judgments of the trial court and the hearing court.

The record reveals that on April 9, 1988, inmate Jimerson asked to see the doctor on his regular Saturday rounds. When he saw the doctor leaving his area he concluded that prison officers had ignored his request. Defendant Jimerson had gone to the recreation yard of the special management facility of the penitentiary when he saw the doctor departing. When corrections officer Walter Raby came to escort him to his cell, the defendant refused to let the officer handcuff him and to go with the officer. He asked why he was not on the doctor call list. The officer replied that he did not know but he would check.

Mr. Raby advised the officer in the control bubble of the situation, and two corrections officers, Brian Compton and Tony Lander, went to the yard and persuaded .

---

* Effective August 2, 1991, Judge Gaitan assumed his position with the United States District Court.

1. All sectional citations refer to the Revised Statutes of Missouri, 1986, unless otherwise indicated.

the defendant to have his hands cuffed behind his back and to return to his cell. They assured him that Sergeant Bellamy would take measures to see that he could see a doctor.

Officers Compton and Lander accompanied defendant Jimerson as they climbed the stairs to the second tier of the housing unit, Officer Lander following closely behind the defendant. At the top of the stairs, the defendant turned and kicked Officer Lander in the groin. The officers then subdued him. Officer Lander asked Mr. Jimerson why he had kicked him. Mr. Jimerson replied, "I'll see the doctor now, won't I?"

The defendant and two witnesses testified that the officers started the violence. Two inmate witnesses testified that three to seven officers handcuffed the defendant, dragged him out of the yard, struck him in the head with nightsticks, and grabbed him by the testicles.

At the trial for offering violence to a corrections officer, the judge overruled the defendant's pretrial objection to shackles but allowed him to have one hand free, although he had to sit chained in a chair and fastened to the floor. Defense counsel did not object to the trial court's decision to have appellant testify from his chair at the counsel table.

On July 18, 1989, defendant Jimerson filed a timely verified *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15. Appointed counsel timely filed an improperly verified amended motion. The amended motion alleged, among other things, ineffective assistance of trial counsel because his trial attorney failed to object to the defendant's testifying from the counsel table. In the motion the defendant contends that this testimony emphasized to the jury his complete shackling and chaining to the floor.

At the evidentiary hearing for the post-conviction relief, the defendant testified that he sat at the far end of the table, away from the jury. He had a chain around his feet, padlocks around his ankles, handcuffs on his wrists connected to a chain around his waist, and sat chained to the floor of the courtroom. He testified sitting in his chair at the counsel table. Deputies took him in and out of the courtroom in shackles in the presence of the jury. He also testified that his counsel did not object to his entering and leaving the courtroom in shackles in front of the jury, even though he asked counsel to object. The attorney testified that he did not specifically recall the trial but that he believed that the court usually removed the jury from the courtroom before the defendant got up from the counsel table.

Defendant Jimerson presents three points in this consolidated appeal: First, that the trial court abused its discretion in having the defendant fully shackled. Second, that jury instruction No. 5 violates the Sixth and Fourteenth Amendments of the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution because the instructions did not require the finding of a culpable mental state. Third, that the defendant received ineffective assistance of counsel when his attorney failed to object to defendant's testifying from the counsel's table because of the shackles.

I.

▮ In his first point on appeal, Mr. Jimerson contends that the trial court abused its discretion in having him shackled because this weakened the presumption of innocence. To prove that the trial court erred in this matter, the defendant bears a dual burden of proof. *State v. Pendergrass*, 726 S.W.2d 831, 832 (Mo.App.1987). First, he must show that the judge abused his discretion when he decided to shackle the defendant and, second, that the court's actions prejudiced the defendant. *Id.* As our supreme court has recognized in another context, to establish an abuse of discretion, a defendant must show that reasonable persons could not differ as to the propriety of the action taken by the trial court. *State v. Young*, 701 S.W.2d 429, 432 (Mo.1985), *cert. denied*, 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986), and *State v. Light*, 686 S.W.2d 538, 541 (Mo. App.1985). Unless the record clearly

shows this abuse and a real probability of injury to the complaining party, the appellate court may not interfere with the discretion of the trial court. *State v. Betts*, 646 S.W.2d 94, 98 (Mo.1983).

A defendant in a criminal case has the right, albeit not an absolute right, to remain free of physical restraint while attending his own trial. *State v. Borman*, 529 S.W.2d 192, 194 (Mo.App.1975). The trial judge must balance the defendant's right with the judge's responsibility for "the conduct of the trial, the safety of all persons, and the prevention of escape." *State v. Pendergrass*, 726 S.W.2d at 832. If the trial judge finds that "good reason" or "exceptional circumstances" exist, he may decide to require the physical restraint of the defendant. *State v. Robinson*, 507 S.W.2d 61, 62 (Mo.App.1974). The judge has "considerable, but not unlimited, discretion in determining the propriety of permitting physical restraints" on the defendant. *State v. Borman*, 529 S.W.2d at 194. The judge decides each case based on the particular facts of that case. *State v. Robinson*, 507 S.W.2d at 62. The factors a reviewing court will weigh include the presence or absence of disruptive conduct on the part of the defendant before or during the trial, the trial atmosphere, the likelihood of an attempt to escape, the age and physical attributes of the accused, the nature of the charged offense, the size and mood of the audience and the adequacy of alternative remedies. *State v. Pendergrass*, 726 S.W.2d at 832.

■ In this case, defendant Jimerson's previous attempted escape from the Cole County jail and his past history of violence showed a potential for escape, disruption, or security risk for others in the courtroom. The trial court minimized the impact of its decision by allowing the defendant to have one hand unshackled and having defendant testify from the counsel's table. In such circumstances, the trial court's decision, based on sound reasons and considered alternatives, did not constitute an abuse of discretion.

■ In the post-conviction proceeding, the hearing court found that the deputies had not paraded the defendant before the jury in shackles. In addition, considering the courtroom, the location of the defendant and the table, the hearing court found that the shackles "might have been visible if one looked carefully, but were not obvious." The record indicates that the defendant kept his shackled hand under the table. Therefore, the defendant has not shown that the minimal exposure of the shackles to the jury prejudiced him.

## II.

■ The defendant's second point contends that the trial court erred because jury instruction No. 5 did not require a finding of a culpable mental state. He argues that his conviction under § 217.385, offering violence to a corrections officer, violated his right to a fair trial and due process as guarantied by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. Since he did not preserve this claim at trial, review of this point must proceed under the plain error rule. Missouri Supreme Court Rule 30.20; *State v. Laws*, 661 S.W.2d 526, 531 (Mo.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice. *State v. Jones*, 643 S.W.2d 34 (Mo.App.1982).

The defendant argues that, with the exception of our recent rulings in *State v. Lee*, 708 S.W.2d 229 (Mo.App.1986), and *State v. Taylor*, 746 S.W.2d 102 (Mo.App. 1988), "previous Missouri case law has consistently indicated that a culpable state of mind is required to sustain a conviction of offering violence to a corrections officer or employee." He cites a number of cases that at least arguably recognized the existence of a requirement for pleading, proof and submission of a culpable mental state to convict one of this offense. He places his chief reliance on the seminal American case dealing with the necessity of proving intent in criminal cases, *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96

L.Ed. 288 (1952). In *Morissette* Justice Jackson at 250 wrote for the Court:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution.

The Government contended in *Morissette* that the Congress in outlawing theft of government property created a strict liability crime. The Court rejected the Government's contention, holding at 263, 72 S.Ct. at 249 that

> [t]he purpose and obvious effect of doing away with the requirement of guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries. Such a manifest impairment of the immunities of the individual should not be extended to common-law crimes on judicial initiative.

The defendant further argues that under *State v. Lee* even conduct entirely free of a culpable mental state may suffice to convict an inmate of offering violence. He points to the language of *Lee* that "[e]ven an unintentional act of violence to an officer or employee in a correctional institution could touch off more violence and perhaps a riot."

In passing we note that the simplistic notion that creating strict liability for offering violence will significantly enhance the prosecutor's chances of obtaining a conviction seems unrealistic. Prosecutors and defenders know that in criminal cases, whatever we tell the jury, jurors will understandably find in violent behavior the intent and willfulness that the common law traditionally required to convict a defendant of an intentional assault. Thus, in a case involving assaultive behavior an instruction requiring the jury to find a culpable mental state, that is, wilful or intentional conduct, would offer little if any discouragement to the prosecutor and little if any advantage to the defendant.

In any event, until the Supreme Court speaks, this court, in a sense bound by its own precedent, will in all likelihood continue to reject the defendant's contention. *See State v. Singleton*, 799 S.W.2d 120 (Mo.App.1990), and *State v. Bailey*, 783 S.W.2d 490, 491 (Mo.App.1990).

### III.

■ Defendant Jimerson's third point of appeal concerns his Rule 29.15 motion for post-conviction relief based on allegations of ineffective assistance of counsel. Mr. Jimerson contends that his attorney rendered ineffective assistance when he failed to object to the defendant's having to testify from the counsel table.

Defendant properly verified his timely *pro se* motion but failed to see to proper verification of the amended motion. Both defendant and his counsel signed the timely filed amended motion before a notary public. The notary used the common form of jurat, which did not comply with Rule 29.-15's verification requirement. It failed to recite the defendant's declaration that he had listed all the grounds for relief known to him, and it failed to include the defendant's acknowledgement of his understanding that he waived any unlisted ground known to him.

Unfortunately, in his *pro se* motion the defendant only in the original *pro se* motion, did not raise his present claim of ineffective assistance. That claim first appears in the amended motion. In just such a circumstance the court in *State v. Oxford*, 791 S.W.2d 396, 401 (Mo.1990), the Supreme Court declined to review points raised only in the original *pro se* motion, although they later appeared in the defendant's unverified amended motion. For the

same reason, we now decline to review defendant Jimerson's belated point.

 To fully discharge our duty, however, we must consider the applicability of the April 9, 1991, Supreme Court decisions in *Sanders v. State*, 807 S.W.2d 493 (1991), and *Luleff v. State*, 807 S.W.2d 495 (1991).[2] If the Rule 29.15 proceedings disclose that movant's counsel failed to comply with Rule 29.15(d) and (e) and that counsel may thus have abandoned the movant, the appellate court must remand the motion to the trial court for a determination whether "counsel has not performed as required by *Rule 29.15(e)*, and the lack of performance is not the result of movant's action or inaction...." *Luleff v. State*, 807 S.W.2d at 498.

In this case *Sanders* and *Luleff* do not apply. When defendant Jimerson signed his amended motion he had the duty under Rule 29.15(f) to verify the motion in conformance with Rule 29.15(d). He failed to do so. Thus, the record itself shows that the failure to meet the rule's requirements at least in part arose from the defendant's own inaction. The record obviates the necessity for a *Sanders–Luleff* hearing.

For the foregoing reasons, we affirm the judgment of conviction entered by the trial court on the jury's verdict and the defendant's appeal of the judgment of the motion court entered on his Rule 29.15 motion.[3]

All concur.

---

**2.** Recently reaffirmed in the court's June 11 decision in *State v. Bradley*, 811 S.W.2d 379, and its July 23 decision in *State v. White*, 813 S.W.2d 862.

**3.** Ex gratia review of the defendant's Point III convinces us that the point has no merit.