STATE of Missouri, Respondent,

v.

Ray Von GIBBS, Appellant.

No. 63271.

Missouri Court of Appeals,
Eastern District,
Division One.

March 15, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 13, 1994.

Application to Transfer Denied
May 26, 1994.

John A. Klosterman, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Attys. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his jury convictions of second degree murder, second degree robbery, and armed criminal action.

At the close of all the evidence, the jury convicted Defendant on all three counts. He was sentenced to twenty years' imprisonment for second degree murder, ten years' imprisonment for second degree robbery, and fifteen years' imprisonment for armed criminal action.

The sufficiency of the evidence is not an issue. The evidence adduced at trial revealed the following: On August 15, 1989, at approximately 11:45 a.m., Deborah Shelton stopped at the Derby gas station on Missouri Boulevard in Jefferson City. When Shelton entered the gas station to pay for her gas, she noticed Defendant entering at the same time. As Shelton was paying for her purchases, Defendant came up behind her and asked the attendant if the boss was in. Shelton turned and looked at Defendant while he was speaking to the attendant. When the attendant told Defendant the boss was not in, he left. When Shelton left the gas station, there was no one else around.

Robert Ordway also stopped at the Derby gas station at approximately 12:05 p.m. When he went inside to pay for his gas, he could not find the attendant. Ordway noticed the door to the stockroom was open and a tennis shoe was sticking out of the door. Ordway opened the door and discovered the attendant's body lying on the floor in a pool of blood.

The cash register tape at the Derby gas station showed Shelton's purchase at 11:45 a.m. It also showed three subsequent transactions, the last being a "no sale," occurring at 11:56 a.m. Also, approximately $338 was missing from the cash register.

Defendant was subsequently charged with second degree murder, second degree robbery, and armed criminal action. At his trial, Jodette Warmack testified that on August 15, 1989, she was watching the noon newscast at her mother's home in Jefferson City when her husband, Michael Warmack, came in with Defendant. Warmack was very upset and was crying. When Mrs. Warmack tried to find out what was wrong, he just kept saying things like, "It was an accident" and "Please let her live." Defendant did not say anything. Warmack then told Defendant to unload the gun. Defendant pulled a gun from under his shirt and unloaded it. Defendant then divided approximately $300 with Warmack and left.

Mrs. Warmack then went with her husband to hide the gun and to burn the clothes he had been wearing during the shooting. Mrs. Warmack later led the police to the gun

and the burned remains of Warmack's clothes. A ballistics expert testified he believed the gun found by the police was the one used to shoot the attendant at the Derby gas station.

In Point I, Defendant asserts reversible error by the trial court's failure to exclude Mrs. Warmack's testimony her husband told her, in Defendant's presence, he had accidentally shot the victim and hoped she did not die. Defendant objected to Mrs. Warmack's testimony, but the court ruled the statements were admissible as nonhearsay because they were not offered for the truth of the matter asserted. *State v. Foley,* 629 S.W.2d 401, 402[2] (Mo.App.1982). Also, the statements may have been admissible under the excited utterance rule, not an issue at trial. *State v. Debler,* 856 S.W.2d 641, 648 (Mo. banc 1993).

In any event, the statements were admissible under the tacit admission rule. A defendant may adopt the statements of another as a tacit admission either by silence or by other conduct significantly acquiescing in the import of the damaging statements. *State v. White,* 665 S.W.2d 359, 363[6] (Mo. App.1984). Further, in determining whether an admission has been made, the relevant statements and actions are construed in light of the surrounding circumstances. *State v. Girardier,* 801 S.W.2d 793, 796[6] (Mo.App. 1991).

When viewed in light of all the surrounding circumstances, Defendant's silence and conduct following Warmack's statements constituted a tacit admission. After the above-mentioned statements were made, Mrs. Warmack testified her husband told Defendant to unload the gun. Defendant pulled a gun from under his shirt and unloaded it. He then divided approximately $300 with Warmack. By his silence and subsequent conduct, Defendant tacitly admitted his part in the murder. *See, State v. White* 665 S.W.2d 359, 363[6] (Mo.App.1984); and *State v. Isa,* 850 S.W.2d 876, 894[43] (Mo. banc 1993).

In his second point, Defendant alleges the trial court erred in overruling his motion to suppress the out-of-court lineup identification because the same "fillers" were used in that lineup as in the lineup that contained Warmack. On August 17, Shelton viewed a lineup containing Warmack and three prisoners who volunteered to be fillers in the lineup. Shelton told police the man she saw at the gas station was not one of these men. On August 29, Shelton again viewed another lineup containing Defendant. Detective Johnson inadvertently used the same three prisoners as fillers in this lineup because they were the only volunteers with physical characteristics similar to Defendant. Shelton identified Defendant as the man she had seen in the Derby gas station on August 15, 1989.

Our review of the trial court's ruling on a motion to suppress is limited to a determination of whether the evidence is sufficient to support its finding. *State v. Villa–Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992). Further, the facts and all reasonable inferences are viewed in favor of the challenged ruling. *State v. Franklin,* 841 S.W.2d 639, 641[1] (Mo. banc 1992).

The test used in determining the admissibility of an out-of-court identification is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive and, (2) if so, what impact did the impermissibly suggestive procedures have on the reliability of the identification made by the witness. *State v. Bullington,* 684 S.W.2d 52, 54[1] (Mo.App.1984).

In setting up their identification procedure, police officers are only required to make reasonable efforts to find participants with physical characteristics similar to the suspect. *State v. Cooper,* 708 S.W.2d 299, 305[12] (Mo.App.1986). Detective Johnson, the detective who conducted the lineups of both Defendant and Warmack, testified that when he requested volunteers for Defendant's lineup, he only received three volunteers with physical characteristics similar to Defendant. These three prisoners were the same ones used in Warmack's lineup, but Detective Johnson stated he had no choice but to use these volunteers because prisoners cannot be forced to participate in lineups.

Further, even if the procedure employed by Detective Johnson was impermissible, it did not effect the reliability of Shelton's identification. Whether identification

evidence is admitted depends more upon the reliability of the identification than the suggestiveness of the procedure. *State v. Hornbuckle*, 769 S.W.2d 89, 93[4] (Mo. banc 1989). The reliability of the identification is to be determined under the totality of the circumstances, after weighing factors such as: (1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty the witness demonstrates at the time of the confrontation, and (5) the length of time between the crime and the confrontation. *Id.; State v. Surgeon*, 823 S.W.2d 63, 65[3] (Mo.App.1991).

Shelton's identification of Defendant as the man in the Derby gas station was reliable. She had ample opportunity to view the man in the gas station and her view was not obscured. Her description of the man to the police was very detailed. Shelton told police she saw a clean-cut black man, approximately 5' 9" to 5' 10" tall, weighing approximately 130 to 140 pounds, and wearing a white T-shirt, blue jeans, and dirty tennis shoes. Shelton also assisted police in the preparation of a composite drawing of Defendant. Further, Shelton's refusal to identify anyone in the first lineup demonstrates her certainty in identifying Defendant. Also, only two weeks had passed since Shelton saw the Defendant in the Derby gas station. Considering the totality of the circumstances, Shelton's identification of Defendant was reliable. *See, Surgeon*, 823 S.W.2d at 65–66[4]. The trial court did not abuse its discretion in refusing to suppress evidence of Shelton's lineup identification of Defendant. Point denied.

■ In his third point, Defendant alleges the trial court erred in overruling his objection to being shackled during his trial. Defendant alleges being in shackles in front of the jury violated his right to a fair trial.

■ The right of a criminal defendant to be free of physical restraints in the jury's presence is not absolute. *State v. Johnson*, 850 S.W.2d 401, 402[2] (Mo.App.1993). Rather, the trial court balances the defendant's rights against the court's responsibility for the conduct of the trial, safety of all persons and prevention of escape. *Id.* In order for

the trial court's decision to be overturned on appeal, Defendant must show: (1) the court abused its discretion in requiring him to appear in shackles, and (2) he was prejudiced by the court's decision. *State v. Jimerson*, 820 S.W.2d 500, 502[1] (Mo.App.1992).

There is no evidence in the record to indicate the court abused its discretion or Defendant was prejudiced by the court's ruling. Rather, the only mention of Defendant's objection in the record seems to refer to some earlier motion which was not included in the record on appeal. The following colloquy which took place prior to trial is the only evidence in the record regarding the shackling of Defendant:

THE COURT: ... While you're still here and we have the record, do you want to move on the basis he's shackled, so we have it on the record?

MRS. BLACK: Thank you, Judge. I have made a motion to the court that the defendant's leg shackles be removed. I understand that there are certain security provisions that are necessary and that would involve the use of shackles. However, for the purposes of the defendant's presentation, whenever the jury is in the courtroom I do not believe that the shackles are necessary. There are at least two guards that are in court, that appear to be directly assigned to the defendant. I have absolutely no problem with that. One of these guards is seated behind the defendant, I believe, or in close proximity. I do believe that these shackles are prejudicial, with respect to the defendant, in that they give the appearance that he is perhaps more dangerous than the jury should be led to believe. For that reason I have asked the court to have the shackles removed.

THE COURT: Overruled.

MR. CALLAHAN: For the record, there is no guard seated within any distance of the defendant. I want to correct the record in that.

MRS. BLACK: I'm sorry.

THE COURT: They are at the doors, instead.

This evidence is insufficient to establish the trial court abused its discretion. In order for Defendant to show the trial court's decision to shackle him was an abuse of

discretion, he must show reasonable persons could not differ as to the impropriety of the trial court's action. *Jimerson,* 820 S.W.2d at 502[1]. No such showing has been made.

Further, Defendant has failed to show any real probability he was injured by the trial court's ruling. *See, Id.* Defendant has failed to present, and we are unable to find, any evidence in the record indicating the jury saw Defendant in shackles during the trial. Point denied.

Defendant also alleges the trial court committed plain error in submitting a reasonable doubt instruction modeled after MAI–CR3d 302.04. Defendant argues this instruction suggests a higher degree of doubt than constitutionally required. This point is denied pursuant to *State v. Griffin* 848 S.W.2d 464, 468–69 (Mo. banc 1993).

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.