**STATE of Missouri, Respondent,**

v.

**Anthony J. WELLS, Appellant.**

No. WD 52914.

Missouri Court of Appeals,
Western District.

March 4, 1997.

Kurt Marquart, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa A. Fischer, Asst. Atty. Gen., Jefferson City, for respondent.

SPINDEN, Judge.

Anthony Wells appeals his conviction of two counts of first degree robbery and two counts of armed criminal action. He charges the circuit court with four points of error: (1) excluding from evidence a co-participant's statement that Wells did not commit the robbery; (2) not admitting a police report indicating that an identification witness was uncertain of her identification; (3) not allowing Wells to testify as to how much he had in his bank account at the time of the robbery; and (4) admitting into evidence a gun recovered from a co-participant. We find no error and affirm his convictions.

Wells does not contest the sufficiency of the state's evidence. The state charged Wells with being one of two persons who used a revolver to take a car and cash from its owner at a carwash in Kansas City on October 24, 1994. The state also charged Wells with using a gun on October 26, 1994, to take cash from a person who had just withdrawn the cash from an automatic teller machine in Kansas City.

■ In his first point, Wells complains that the circuit court erred in refusing to let the jury hear a statement by Kevin Shelton to a police detective that he was present when one of the robberies occurred and that someone other than Wells committed it. The circuit court declared that Shelton was not available as a witness after Shelton invoked his constitutional right not to incriminate himself. Wells offered Shelton's statement, but the circuit court rejected it on the ground that the statement did not have sufficient *indicia* of reliability. As an offer of proof, Wells proffered the testimony of the police detective who had received the statement:

Q [Did Kevin Shelton] make a statement that would have implicated him [in the October 26th robbery]?

A Yes. He stated that he was present when the robbery occurred.

Q And he also indicated that he knew the robbery had occurred and he drove the car away; is that right?

A Correct.

Q Now, during that interview, did he indicate who the person was that committed that robbery?

A Yes. He identified him as an individual known to him as Gordon Nelson.

Q Did he describe Gordon Nelson?

A Yes, he did.

. . . .

Q Now, did you also during that interview show Mr. Shelton ... a picture of Anthony Wells?

A Yes, I did.

Q And what did he indicate when you showed him that picture?

A He indicated that he did not know the individual in the picture.

Q And that he was not the one that committed the robbery?

A That's what he stated.

In cross-examination, the detective testified:

Q [W]ho did Kevin Shelton—what name did he first give you?

A He initially identified himself as Wesley Augmen.

. . . .

Q After he lied to you about his name, then he told you that he was there at the robbery; is that correct?

A Correct.

Q But he was in the car not paying any attention to what was going on?

A Yes, that's what he stated.

Q And that this man who robbed the victim jumped in the car and told him to drive off; is that correct?

A Yes, that is accurate.

Q So he was not an active participant in the robbery?

A No, not in the robbery itself.

. . . .

Q Never able to give you an address for Mr. Nelson?

A No.[1]

Q Were you able to track down this Gordon Nelson?

A No. I made some attempts, but I did not find any individual under that

name that matched the identifiers that he had provided me.

Q Okay. So you were unable to verify his account of the story?

A Right.

As an out-of-court statement offered to prove the truth of the matter asserted, Shelton's statement was hearsay. *State v. Shurn*, 866 S.W.2d 447, 457–58 (Mo. banc 1993), *cert. denied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Wells asserts that Shelton's statement was a declaration against penal interest and should have been admitted. Missouri courts reject the notion that a declaration against penal interest should be admitted in a criminal case unless "substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused." *State v. Turner*, 623 S.W.2d 4, 9 (Mo. banc 1981), *cert denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982)(emphasis in original omitted). From *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Missouri courts have recognized these *indicia* as the standard for judging admissibility of the purported declaration against interest: (1) the confession was self-incriminatory in a real sense and was unquestionably against interest; (2) the declarant made the statement spontaneously to others; and (3) other evidence in the case corroborated the statement. *State v. Blankenship*, 830 S.W.2d 1, 7 (Mo. banc 1992). None of these *indicia* of reliability describe Shelton's statement.

It was not self-incriminatory in a real sense. Shelton did not admit that he actually committed the robberies—only that he was present and knew who committed it. He claimed that Gordon Nelson jumped in the car and told him to drive away. As the Supreme Court noted in *Blankenship*:

Even if [the declarant's] alleged statement implicates him as an accessory, the portion of his statement suggesting his own complicity is distinguishable from that aspect of his statement in which he names the others who actually committed the crimes. The disserving aspect of [the declarant's] statement is inconsequential. The only

---

1. From the context we deem the detective to have been agreeing with the question.

significant aspect of [the declarant's] statement and the only purpose for which it was offered was to establish the identity of others who actually committed the crimes.[2] The portion of the statement in which [the declarant] named those who committed the actual robbery and murders is not against [the declarant's] interest. That portion is either neutral or selfserving in nature.

*Id.* at 8. We have no evidence that Shelton made the statement at or near the time of the incident to others, and nothing in the record corroborates his statement. Moreover, Shelton lied to officers about his name, and he could not tell officers where Gordon Nelson lived. The circuit court did not err in rejecting Wells' proffered testimony.

■ In his second point, Wells complains that the circuit court erred in refusing to let the jury hear a police officer's testimony concerning one of the victim's uncertainty in identifying Wells as the person who robbed him. Wells proffered a police report which said, "The victim was uncertain if the subject was a suspect in the robbery." The circuit court sustained the state's objection that the report was hearsay after Wells, in making an offer of proof, proffered this testimony of the officer who prepared the report:

Q  [Your report] [s]tates that the victim did not identify the defendant?

A  That's correct.

Q  When did you receive that information?

A  I believe from another police officer.

Q  Did you ever talk to the victim yourself?

A  No.

Q  Did you ever see the victim identify anyone?

A  No.

Wells contends that the circuit court should have received the report as a business record.

■ We do not pass judgment on the contention because we discern no prejudice to Wells. The victim readily admitted to Wells

at trial his uncertainty on October 26, 1994, in identifying Wells as the man who robbed him:

Q  You are certain at that time—you were sure at that time that that was the person?

A  I was troubled about the identification. Can I go ahead and get this out of the way?

Q  Yes, sir.

A  Just go ahead and try to clarify it for you?

Q  Yes, sir.

A  Was real troubled because I felt like my testimony was likely to put somebody in jail or not, and I wanted to be absolutely sure. And that night I still had—I had trouble sleeping that night because of these discrepancies [concerning Wells' hair and that he was wearing a T-shirt rather than a dark jacket]. And I realized that he was standing in front of a building with two high-intensity lights on him, he held me up in a dark parking lot where I wouldn't have seen gleaming hair. He had dark clothing on. It's easy to take off a jacket and have a white T-shirt on underneath.

Once I was absolutely certain in my own mind enough to be here under oath to say I believe this is the person that held me up, and I slept good on that account since then, and I will sleep good tonight.

Q  My question to you is—

A  So I did have some doubts, yes.

Q  Did you tell any of the police officers that?

A  I discussed it with the woman officer, yeah, of what, you know, this is bothering me.

Q  Did you discuss it with any other officer?

A  Not that I recall.

That the victim lost sleep because he was worried about the accuracy of his identification and described himself as being "real troubled" appears to make the point Wells

---

2. Like Shelton, the declarant in Blankenship admitted only to being present but denied any ac-  tive participation.

wanted to make through the police report. We fail to discern any prejudice from the purported error. Only prejudicial error is reversible error. *State v. Wayman,* 926 S.W.2d 900, 904 (Mo.App.1996).

In his third point, Wells complains that the circuit court erred in excluding as irrelevant his evidence that he had $39,000 in his bank account in October 1994. He contends that such evidence was relevant because it was probative evidence of his lack of motive.

The circuit court has broad discretion in ruling on questions of relevancy of evidence and, in the absence of a clear showing of an abuse of discretion, we will not interfere with the circuit court's ruling. *State v. Ramsey,* 820 S.W.2d 663, 667 (Mo. App.1991). To establish an abuse of discretion, a defendant must show that reasonable persons could not differ as to the propriety of the action taken by the trial court. *State v. Jimerson,* 820 S.W.2d 500, 502 (Mo.App. 1991).

We do not discern an abuse of discretion in this case. That Wells had $39,000 in the bank was not relevant to the elements of first degree robbery. It did not logically tend to prove a fact in issue or corroborate relevant evidence bearing on the principal matter at issue. The point is without merit.

In his final point, Wells complains that the circuit court erred in letting the state tell the jury that police took a semi-automatic pistol from Shelton after arresting him and in letting the state show the gun to the jury. "It is clear that this gun, with no connection to the Defendant," Wells argues, "should not have been admitted as it was irrelevant and had no probative value."

We disagree. The victim of the first robbery testified that his robbers used a weapon like the one Shelton had, and officers arrested Shelton after he was driving the first victim's car. Given the circuit court's broad discretion in determining the relevancy of evidence, we discern no prejudice in its deci-

sion to admit the pistol. It had a sufficient link to Wells and to the facts of the case.

LOWENSTEIN, P.J., and HOWARD, J., concur.