STATE of Missouri, Respondent,

v.

Herbert BOWENS, Appellant.

No. 71629.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 3, 1998.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant, Herbert Bowens, appeals from the judgment entered by the trial court on a jury's convictions of two counts of rape, Section 566.030,[1] one count of kidnapping, Section 565.110, and one count of creating a grave and unjustifiable risk of HIV infection, Section 191.677(2). The trial court sentenced defendant to consecutive terms of life imprisonment for each count of rape, thirty years for kidnapping, and ten years for risking infection with HIV. We affirm.

Defendant raises five points on appeal. He first contends that Section 191.677.1(2) is overbroad on its face, and therefore unconstitutional. Second, defendant argues the state failed to meet its burden of proof beyond a reasonable doubt that his conduct created a "grave and unjustifiable risk" of infecting victim with HIV. Defendant also contends his

---

1. All statutory citations are RSMo 1994.

rights were violated when the trial court sustained the State's motion in limine and refused to let defense counsel present evidence that victim is HIV negative, when the trial court excluded defendant from the courtroom during the reading of the jury's verdict, and when the trial court overruled defense counsel's objection and let the State elicit testimony that Officer Hepler talked to one of defendant's alibi witnesses, and "wasn't able to verify" defendant's alibi.

We view the evidence in the light most favorable to the jury's verdicts. At about 9:30 P.M. on February 25, 1995, victim, an eighteen year old female, went to a caf on the "Loop" with her friends. Victim went outside to get away from the cigarette smoke and got in her car. Defendant knocked on victim's car window. Defendant asked victim if she felt okay because she looked depressed. Victim said she felt fine and began to roll up her window. Defendant pointed a gun at victim and grabbed her through the window.

Defendant unlocked the door and instructed victim to move over. She complied and defendant got into the driver's side of the car. Defendant told victim to get on the floor, which she did. Defendant drove victim's car for five to ten minutes, while victim remained on the floor. Finally, defendant told victim she could return to the seat. As they drove through a residential area in University City, he told her he wouldn't hurt her and that he just needed drug money. He drove victim to an alley and parked the car in back of one of the houses.

After victim told defendant she had no way to get money, defendant asked victim if she would have sex with him. She said, "No, not a chance." He asked again. Again, she denied his request. Defendant pointed the gun at the base of her neck.

Defendant made victim undress and twice raped her. When he stopped, defendant told victim to put her clothes back on. He obtained a towel from victim's trunk. He drove over a block, wiped off everything he thought he had touched, told victim not to tell anyone, and got out of the vehicle. He took the towel and victim's car phone. Victim drove away.

Victim stopped at a residence, to tell a stopped police officer what happened. The officer broadcast a description of the rapist. Officer Becker spotted defendant. Defendant matched the description. Defendant had a rectangular object, three or four inches thick, and a beige-colored towel. When Officer Becker eventually stopped defendant, defendant no longer carried the object. Police later found victim's car phone in the area where Officer Becker first spotted defendant carrying the object. Police also found a BB-gun, shaped like a semi-automatic pistol, near the area where the rape occurred. Victim identified defendant as her attacker. A victim rape kit was performed at St. Mary's Health Center.

Defendant told the police he had tested positive for HIV about one year earlier.[2] Police tried to perform a suspect rape kit. Defendant refused. He admitted the gun was his and that he got rid of it because he thought he might be stopped.

Defendant told the police he walked from the Loop to visit two ladies, named Toni and Kim. He explained that he stayed with them until about midnight, then talked to two men at a vacant lot, went to visit his friend, Rob, who wasn't home, and began walking home when he was arrested. A detective testified that he spoke to Toni Buchanan, who did not verify defendant's story.

Defendant's underwear had stains indicating the presence of semen and the PGM subtype from the semen matched the defendant's subtype. Stains in the back of victim's car indicated the presence of semen with the same PGM type as defendant. Defendant also had semen stains on his jeans. DNA testing showed the DNA from the car's upholstery matched defendant's DNA. The frequency with which that DNA profile occurs is less than one in one hundred million people. Dog hairs found on defendant's shirt and in the vacuum sweepings from the victim's car were microscopically indistinguishable. Vic-

---

2. Defendant tested positive for HIV on February 2, 1994. Defendant signed a medical record sheet, indicating he knew he had the virus.

tim testified her two dogs rode in her car frequently.

Defendant first contends that Section 191.677.1(2) is overbroad on its face and therefore, unconstitutional. Defendant argues the statute is not narrowly drawn to criminalize only risking infection without consent, but also criminalizes otherwise constitutionally protected behavior such as consensual sexual intercourse between adults who have full knowledge of the risks and consequences of their actions.

When a state chooses to regulate matters involving sensitive rights of its citizens, it is obligated to do so in a manner that is narrowly drawn to express only those objectives. *Carey v. Population Services International*, 431 U.S. 678, 686, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). Defendant argues Section 191.677 [3] is overbroad because it makes no exception for knowing and consenting partners, which is constitutionally protected conduct. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (applying the Fourteenth Amendment right of privacy).

If defendant's constitutional challenge had been preserved for review this Court would not have jurisdiction and the appeal would be transferred to the Missouri Supreme Court. *State v. Sullivan*, 935 S.W.2d 747 (Mo.App.1996). We have jurisdiction in this case because defendant failed to preserve the constitutional challenge for appellate review. During his argument on his motion for judgment of acquittal at the close of the state's case, defendant objected, stating Section 191.677.1(2) was unconstitutionally "vague" because HIV was not properly defined. Later, defendant objected to the instruction on the count of creating a grave and unjustifiable risk of HIV infection, claiming the statute was unconstitutionally

vague. Defendant again argued the statute was unconstitutionally vague in his motion for new trial. Defendant raises the claim that the statute is unconstitutionally overbroad for the first time on appeal.

"A constitutional question is waived if not raised at the earliest opportunity." *State v. Plummer*, 860 S.W.2d 340, 351 (Mo. App.1993); *See also State v. Sullivan*, 935 S.W.2d 747, 754 (Mo.App.1996). Points raised on appeal are required to be based upon the same theory as the objection made at trial. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974). Defendant did not raise constitutional overbreath by objection or in his motion for new trial. As a result, transfer to the Missouri Supreme Court is not required and there is also no issue for review before this Court. *See State v. Roberds*, 820 S.W.2d at 621, 622 (Mo.App.1991).[4]

Defendant asserts the trial court erred in denying his motions for judgment of acquittal at the close of the state's case and the close of all the evidence and in sentencing him on his conviction of risking infection with HIV because there was less than substantial evidence to support every element of a violation of Section 191.677. Specifically, defendant contends the State presented no evidence from which the jury could find or decide that the defendant's acts created "a grave and unjustifiable risk" of infecting victim with HIV. We disagree.

In determining whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt, we view the record in the light most favorable to the State, and accept as true all evidence and inferences therefrom. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462

3. "It shall be unlawful for any individual knowingly infected with HIV to deliberately create a *grave and unjustifiable risk* of infecting another with HIV through sexual or other contact when an individual knows that he is creating that risk." Section 191.677.1(2) RSMo 1994 (emphasis added). Section 191.677.1(2) has been amended by the legislature and now prohibits a person from acting "in a reckless manner by exposing another person to HIV without the knowledge and consent of that person to be

exposed to HIV . . ." Section 191.677.1(2) RSMo Cum.Supp.1997.

4. Moreover, defendant appears to lack standing to raise this issue of constutitionality because the overbreadth doctrine has not been recognized outside the limited context of the First Amendment. *State v. Kerr*, 905 S.W.2d 514 (Mo. banc 1995).

(1993). The state's evidence showed defendant had HIV; defendant knew he had HIV; and defendant raped victim. Defendant argues that in addition, the State must present evidence that there existed a "grave and unjustifiable risk" of infecting victim.

■ Defendant waived any error with respect to the denial of his motion for judgment of acquittal at the close of the State's evidence when he presented evidence in his own behalf after the denial of that motion. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). The State must, however, present evidence sufficient to reasonably establish every element of the crime to overcome defendant's motion for judgment of acquittal at the end of all the evidence.

On appeal, defendant admits it is common knowledge that sexual intercourse can transmit HIV. Therefore, the jury could have found a "risk". The evidence of defendant's rape of victim indicates there could be no "justification" for this risk. Defendant contends that the point turns on the lack of proof that the risk was "grave".

A reasonable juror could have concluded that defendant created a grave and unjustifiable risk of infection. Contrary to defendant's assertion, statistical evidence concerning the actual risk of infection was unnecessary. "Grave" is defined as "(1) involving or resulting in serious consequences: likely to produce real harm or damage; (2) very serious: dangerous to life—used of an illness or its prospects." Webster's Third New International Dictionary 992 (15th ed.1966). There was medical evidence that, as a result of defendant's rape of victim, victim's vaginal area was bleeding and bruised, and that sperm was found in victim's vaginal fluid. Reasonable jurors could have therefore determined, that the "risk" of HIV infection, which defendant concedes existed, was "grave". Moreover, if the legislature intended the word "grave" to encompass the word "substantial", a jury could still have found such a risk existed without medical testimony. *See State v. Trimmer,* 849 S.W.2d 725, 727–728 (Mo.App.1993) (holding in case involving proof of "serious"

physical injury that medical testimony was unnecessary).

■ Defendant contends the trial court erred in sustaining the State's motion in limine and refusing to let the defense present evidence that victim tested HIV negative. Defendant argues this evidence was relevant to defendant's misidentification defense. In criminal cases involving the erroneous exclusion of relevant defense evidence, error is presumed to be prejudicial. *Burton v. State,* 641 S.W.2d 95, 99–100 (Mo. banc 1982); *State v. Bashe,* 657 S.W.2d 321, 325 (Mo.App.1983). That presumption can be overcome only by showing the error was harmless beyond any reasonable doubt. *Id.*

■ The trial court did not err in excluding this evidence. It has broad discretion in determining the admissibility of evidence and testimony. *State v. Parkhurst,* 845 S.W.2d 31, 36 (Mo. banc 1992). There must be a clear showing of an abuse of discretion for an appellate court to interfere with a trial court's ruling on the admissibility of evidence. *Id.* The trial court is given discretion "because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant." *State v. Langston,* 889 S.W.2d 93, 98 (Mo.App.1994).

■ Evidence is logically relevant if it tends to prove or disprove a disputed fact or corroborate relevant evidence and relates to a principle issue in the case. *State v. Hill,* 817 S.W.2d 584, 587 (Mo.App.1991). Evidence that victim was HIV negative may or may not have been logically relevant to defendant's misidentification defense. If the HIV test was performed on victim immediately after the crimes occurred, while receiving treatment in the hospital, it would not be logically relevant. If the HIV test was performed after a sufficient period of time elapsed, it may be slightly relevant to a misidentification defense, depending on the likelihood of transferring the infection. *See State v. Terry,* 582 S.W.2d 337 (Mo.App.1979) (finding evidence that defendant did not obtain venereal disease from infected victim inadmissible under a misidentification defense on the basis of "hypothetical connecting evidence").

■ Even if logically relevant, the trial judge has discretion to limit such evidence if the judge believes the evidence is not legally relevant. Because of concerns of prejudice or confusion of the issues, the judge could have determined the slight logical relevance was outweighed by the harm caused and thus, legally irrelevant.

■ Regardless of the logical or legal relevance, defendant did not properly preserve this point for appellate review. When the trial court sustained the State's objection to the proffered evidence, the defendant was obligated to make a proper offer of proof to preserve the matter for the purpose of review. *State v. Fleer,* 851 S.W.2d 582, 595 (Mo.App.1993). The purpose of an offer of proof is to provide the substance of the excluded testimony, in sufficient detail to demonstrate its relevancy and materiality. *State v. Foulk,* 725 S.W.2d 56, 66 (Mo.App.1987). An offer of proof "must demonstrate the relevancy of the testimony offered, must be specific, and must be definite." *Fleer,* 851 S.W.2d at 595.

■ Defendant's offer of proof falls short of the requisite demonstration. It was vague, indefinite and inadequate. Defendant stated that a physician would testify that victim tested negative for HIV. Defendant did not offer any information regarding the date of testing. If the victim had tested negative at the hospital immediately after the rape, such evidence would not be relevant or helpful to the misidentification defense because the virus may not have yet been present in the victim's bloodstream. The offer of proof was insufficient because it did not say how long after exposure victim was tested or how long after exposure before a person could test positive. Point denied.

Defendant also contends the trial court erred in excluding defendant from the courtroom when the jury returned its verdict. Defendant argues that a criminal defendant has a right to be present at every critical stage of the trial and that the return of the jury verdict is a critical stage of a trial.

On October 11, 1996, the trial court noted that defendant refused to come out of his cell prior to the reading of instructions to the jury. The trial judge decided to proceed, despite defense counsel's objection. The instructions were read to the jury. The trial judge declined defense counsel's request to delay the proceedings further and allowed the parties to proceed with closing arguments. The jury retired to deliberate.

The jury returned with its verdict at 3:20 P.M. Defense counsel indicated that defendant wanted to be present for the verdict and the court denied that request. With the exception of defendant's absence, defendant makes no claim that anything irregular occurred at the rendition of the verdict. The jury was polled at the request of the defendant's counsel.

Defendant claims he had a right to be present at all stages of his trial pursuant to the confrontation clause of the Sixth Amendment and pursuant to his due process rights. "A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). The trial court's ruling did not violate defendant's constitutional rights.

■ The confrontation clause of the Sixth Amendment relates only to proceedings where there is interference with the defendant's opportunity for full and effective cross examination of witnesses. *Stincer,* 482 U.S. at 739–46, n. 17, 107 S.Ct. at 2664–67, n. 17; *State v. McFerron,* 890 S.W.2d 764, 768 (Mo.App.1995). Defendant contends he is entitled to be present at all critical stages of the trial and the return of the verdict is a critical stage. Even if the return of the verdict is a critical stage, defendant's absence during this stage did not violate the confrontation clause of the Sixth Amendment.

■ Defendant also has a due process right to be present when his presence would contribute to his opportunity to defend himself against the charges brought. *Stincer,* 482 U.S. at 739–46, 107 S.Ct. at 2667; *McFerron,* 890 S.W.2d at 768. A defendant's presence is normally required if his absence would "thwart a fair and just hearing".

*McFerron,* 890 S.W.2d at 768. We recognize the rendition of the verdict as an important stage of a criminal trial.

■ We, however, also recognize the trial court is charged with the obligation of maintaining an orderly procedure in the courtroom. *State v. Reed,* 640 S.W.2d 188 (Mo.App.1982); *State v. Irvin,* 628 S.W.2d 957, 959 (Mo.App.1982). "A trial court has discretion to determine what constitutes disruption and what action is necessary under the circumstances of each case." *State v. Sahakian,* 886 S.W.2d 178, 180–81 (Mo.App. 1994) (citing *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970)); *See also State v. McGinnis,* 441 S.W.2d 715, 717 (Mo.1969). A defendant can lose his right to be present at trial. *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970). An accused cannot claim the benefit of constitutional rights while at the same time engaging in disruptive conduct that makes it exceedingly difficult to carry on a trial. *Id.*

■ Additionally, a criminal defendant can voluntarily waive his constitutional right to be present during his trial. *See State v. Drope,* 462 S.W.2d 677 (Mo.1971); *State v. McCrary,* 365 Mo. 799, 287 S.W.2d 785 (1956). An absent defendant, who is at liberty during the trial, waives his right and privilege to be present. *Drope,* 462 S.W.2d at 682. Similarly, the absence of a defendant resulting from an intentional act by him done for the express purpose of preventing his presence at trial can constitute a waiver of his right to be present.

■ In the instant case, defendant refused to come out of his cell on the morning of October 11, 1996. The trial court instructed the transportation officers to forcefully remove defendant from his cell. The record indicates the transportation officers attempted to remove defendant from his cell. Defendant refused, using his HIV status to intimidate the transportation officers. Defendant's refusal to come out of his cell is

similar to a voluntary waiver of his right to be present prior to the reading of jury instructions and the closing statements. Although the trial judge properly attempted to compel the presence of the defendant, it was within the trial judge's discretion to commence proceedings without defendant for the purpose of maintaining order in the courtroom. Defendant does not contest this point on appeal.

Defendant argues his conduct did not warrant his continued exclusion from the courtroom during the rendition of the verdict that afternoon. For several reasons we disagree. First, defendant created the problem. He refused to come out of his cell that morning. The transportation officers were unsuccessful in their attempts to enforce the court's order to bring defendant to court, in part because of his HIV status.[5] The trial judge also indicated on the record that he had experienced problems with defendant throughout the trial. The previous day, the defendant continuously glared at the trial judge. Rulings in this respect depend largely upon tones of voice, facial expressions and other similar factors which give context to the trial episodes and rulings thereon. Those factors may not be reflected in the cold record on appeal. They support a finding that defendant may find new ways of disrupting the trial. We therefore, defer to the trial court's better opportunity to appraise the trial situation. *State v. Reed,* 640 S.W.2d at 197.

■ A discretionary ruling is presumed correct and the burden of demonstrating abuse is cast on the party appealing. *State v. Leonard,* 606 S.W.2d 403, 408 (Mo.App. 1980). "As our supreme court has recognized in another context, to establish an abuse of discretion, a defendant must show that reasonable persons would not differ as to the propriety of the actions taken by the trial court." *State v. Jimerson,* 820 S.W.2d 500, 502 (Mo.App.1991).

---

5. Prior to the sentencing hearing, the defendant refused to clothe himself. At that time, the trial court revisited the issue of defendant's behavior, stating that defendant had repeatedly thrown feces at people in the St. Louis County Department of Justice Services. There is no evidence as to whether these acts occurred before or after the rendition of the verdict and they are therefore, not determinative.

█ The trial court did not abuse its discretion in the instant case. An accused person, placed upon trial and protected by constitutional and statutory safeguards, cannot be allowed to defy the processes of the law, paralyze the proceedings, and turn them into a farce, taking advantage of his own wrong. *State v. Drope*, 462 S.W.2d at 683 (citing *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912)). "[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Allen*, 397 U.S. at 343, 90 S.Ct. at 1061.

█ We are cognizant of the rule that once lost, the right to be present at trial can be reclaimed. However, the trial court need not allow the criminal defendant to control the proceedings by alternating his right to waive his presence and his right to be present, in an effort to frustrate the wheels of justice. We find no abuse of discretion and no constitutional violation. Point denied.

Finally, defendant contends the trial court erred in overruling his objection to testimony that Officer Hepler talked to one of defendant's alibi witnesses, Toni Buchanan, and Officer Hepler "wasn't able to verify" defendant's alibi. Specifically, defendant argues that this testimony was prohibited hearsay testimony, which prevented defendant from confronting or cross-examining the witness against him.

█ Hearsay evidence is objectionable because the person who makes the offered statement is not under oath and is not subject to cross-examination. *State v. Robinson*, 484 S.W.2d 186, 189 (Mo.1972). In the instant case, Officer Hepler was questioned as follows:

Q: Now, since he said he was with Toni and Kim until midnight, did you try and verify his story?

A: Yes, sir.

Q: Were you able to do that?

A: Well, I was able to talk to Toni, who is Antoinette Buchanan.

Defense counsel: Your Honor, I'll object, it's hearsay what she said.

Court: Sustained to what she said.

Q: After you did talk with her though were you of the opinion that Herbert told you the truth.

Defense counsel: Your Honor, I'm going to object to that.

Court: Sustained.

Q: But he did tell you he was with these people until midnight?

A: Until around midnight, yes.

Q: But you weren't able to verify that with those people?

Defense counsel: Your Honor, I'm going to object to that, that calls for hearsay.

Court: Overruled.

Q: Were you able to verify that with those people?

A: No.

Q: You did talk to those people?

A: I talked to Antoinette Buchanan.

While the trial judge never allowed the officer to testify to exactly what Toni said, he did allow testimony that Officer Hepler contacted Toni and was unable to verify the defendant's alibi.

█ In Missouri, it violates the hearsay rule to create a set of circumstances by the testimony of a witness which invites the inference of hearsay. *State v. Valentine*, 587 S.W.2d 859, 861 (Mo. banc 1979); *State v. Chernick*, 280 S.W.2d 56 (Mo.1955). In *Valentine*, the police officer testified he arrested Valentine based in part on an interview with an accomplice. The Missouri Supreme Court wrote, "[i]t is clear that the state has set up a set of circumstances that invites the inference of hearsay evidence, namely that Bateman told police appellant's name and described appellant's automobile." *Valentine*, 587 S.W.2d at 862. Valentine's conviction was reversed.

In the instant case, the jury was likely left with the inference that Toni told the police officer that the defendant did not stay with her until 12:00 on the night in question. The State argues Officer Hepler's statement would not have left a clear inference that defendant lied about his alibi because the phrase "unable to verify" could have also meant either Toni refused to answer ques-

tions about defendant's alibi or Toni did not remember if she was with defendant at the time in question. The quoted testimony clearly set up a set of circumstances that invited the inference of hearsay evidence, namely that Toni told Officer Hepler that defendant was not with her until midnight on the night in question. Defendant did not have an opportunity to cross-examine Toni Buchanan. The ruling was erroneous. The question is, was it prejudicial.

■ The inferred hearsay was harmless, given the strong evidence of defendant's guilt. *See State v. Kilgore,* 771 S.W.2d 57, 62 (Mo. banc 1989), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *State v. Clements,* 849 S.W.2d 640, 645 (Mo.App. 1993). Defendant asserts the inferred hearsay discredited his alibi defense. There is overwhelming evidence of defendant's guilt and that the alibi defense is unsupportable. The victim described the rapist to the police. Police found defendant in the area where the rapes occurred, within minutes after the crimes took place. Defendant was observed carrying items matching the description of those taken from the victim. Police found some of these items near the location where they arrested defendant. Defendant admitted to having thrown his gun away when he saw the police. The victim testified that the rapist used a gun during the rape. The victim identified the defendant as the rapist. The DNA in the semen found in the back seat of the victim's car matched that of defendant's DNA. There was semen found in defendant's underwear and jeans, matching defendant's PGM subtype. Dog hairs found on defendant's clothing matched dog hair found in the back of the victim's car. Thus, there was overwhelming evidence defendant committed the charged crimes and that the alibi defense was not supported by the evidence. Any error on the part of the trial court was harmless. Defendant was not deprived of a fair trial.

The judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.