**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Jackson Leroy NEELY, Defendant–
Appellant.**

**No. 21618.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 17, 1998.

554

Nancy L. Vincent, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Jackson Neely (Defendant) was convicted by a jury of murder in the first degree in violation of section 565.020.[1] The Circuit Court of Carter County sentenced Defendant to the Missouri Department of Corrections for a term of life without eligibility for parole or probation. We affirm.

Defendant does not challenge the sufficiency of the evidence to support the conviction. We consider the facts and all reasonable inferences therefrom in the light most favorable to the verdict and reject all contrary evidence and inferences. *State v. Rush,* 949 S.W.2d 251, 252 (Mo.App.1997).

## I.

In October 1994, Mandel Steward died of a gunshot wound which law enforcement officers concluded was self-inflicted by accident. Randall Steward (Mandel Steward's son) and Leonard Steward (Mandel Steward's nephew) did not believe the shooting was accidental. They believed that Mandel Steward had been murdered. They also believed that Terri Bell, the victim in the case at bar, was present when Mandel Steward was killed, knew the identity of his assailant, and was involved in causing his death.

On January 12, 1995, Defendant and Terri Bell were at Defendant's residence, located in Paragould, Arkansas. Randall Steward, Leonard Steward, Charles Perkins, Lee Dillard and Argel Morrow traveled to Defendant's residence to question Terri Bell about the identity of Mandel Steward's assailant and her involvement. When asked who had shot Mandel Steward, Terri Bell stated that she did not know. Defendant then pulled out a gun, held it to her head and stated, "Tell me what you told me 'while ago.'" Terri Bell pushed the gun away and said to Defendant, "Oh, honey, don't." At that point, Argel Morrow stated to Defendant, "Before you 'uns do anything now, I'm a deputy sheriff." Defendant put the gun away.

Randall Steward, Leonard Steward and Defendant then continued to question Terri Bell.[2] Terri Bell was slapped in the face by Randall Steward and Leonard Steward, and there is evidence in the record that suggests that Defendant knocked Terri Bell's head against a wall, splattering some blood from her head on the wall and leaving an indentation on the wall. Terri Bell then began to cry and stated that indeed she knew who killed Mandel Steward.

Argel Morrow testified that he heard Terri Bell say to Randall Steward, Leonard Steward and Defendant that she was at Mandel Steward's house, "dancin' and drinkin'," and that at some time during the evening she "heard the gun go off, and turned around, and Marcus [Torres] had a gun in his hand and said it was an accident." Argel Morrow also testified that after Terri Bell had made the foregoing remarks, he then heard Defendant say to Randall Steward and Leonard Steward, "You don't mind if she comes up missing, do you?"

At approximately 9:30 p.m. that day, Terri Bell visited Michael Bryan at his home in Paragould, Arkansas. Michael Bryan noticed that Terri Bell had a black eye, some "red spots on her in a few places," and that her lips were "swollen from being busted." Terri Bell asked Michael Bryan to help her move some of her personal possessions to Defendant's home on South Seventh Avenue in Paragould. Terri Bell told Michael Bryan she had been beaten up by some men, that one or more of those men were armed, and that she believed that Defendant[3] would protect her from Marcus Torres.

---

1. All statutory references are to RSMo 1994.

2. Although present, Argel Morrow did not participate in the questioning of Terri Bell.

3. Defendant was also known and identified at trial as "Jack Dillard" and "Desperado."

Gary Goldsmith made two statements, identified at trial as State's Exhibits 6 and 7, to law enforcement officials at the Paragould Police Department in Arkansas. In his second taped statement, (Exhibit 7) Gary Goldsmith stated that the day after Terri Bell had been forced to admit to her complicity in the murder of Mandel Steward, Defendant informed Gary Goldsmith that he had been instructed by one of the Stewards to kill Terri Bell. Defendant was supposed to wait for the Stewards to tell him when to "do it." However, Gary Goldsmith stated that Defendant did not wait for the Stewards to call him, but "went ahead and called them and they said, 'Go ahead.'" Gary Goldsmith also stated that on January 14, 1995, he, Defendant and Terri Bell went for a drive, drove to Missouri and stopped the car on a gravel road near the Wilhelmina Club.[4] When they stopped, Terri Bell got out of the car to urinate. Defendant exited the car at the same time as Terri Bell, but Gary Goldsmith remained in the car. While Terri Bell was urinating, Defendant shot her in the head with a .38 caliber pistol. The shot killed her. Defendant placed Terri Bell's body into a nearby pond. Defendant and Gary Goldsmith then drove away and returned to Paragould, Arkansas. The next day Terri Bell's body was discovered in a pond near Wilhelmina Road.

During the trial, the State sought to admit in evidence the transcript of Gary Goldsmith's testimony taken during Defendant's preliminary hearing. Gary Goldsmith was not available to personally testify at trial because he died of an illness prior to Defendant's trial (held over a year after the preliminary hearing). Over Defendant's objections, the transcript of Gary Goldsmith's preliminary hearing testimony was read to the jury by a neutral party and both tape-recorded statements made by Gary Goldsmith to law enforcement officers were also admitted in evidence and played for the jury.

## II.

In his first point, Defendant argues that the trial court abused its discretion and com-

mitted reversible error: (a) by allowing the State to present to the jury the preliminary hearing testimony of Gary Goldsmith, deceased at the time of trial; (b) in giving a "curative instruction" regarding the reading of Gary Goldsmith's preliminary hearing transcript at trial; (c) because he did not have a "qualified attorney" during the preliminary hearing proceedings, hence the testimony and statements received into evidence were not subject to meaningful cross-examination; (d) that the two tapes, consisting of unsworn statements of Gary Goldsmith, should not have been played to the jury; and (e) that the statements contained inaccuracies, were unreliable, untested and contained numerous instances of inadmissible evidence. We review each subpoint separately.

### Preliminary Hearing Transcript

Defendant argues that the trial court's admission in evidence of the transcript of Gary Goldsmith's testimony taken during Defendant's preliminary hearing, violated "his rights to confront and cross-examine witnesses against him under the Sixth and Fourteenth Amendments" of the United States Constitution. This argument is without merit.

The general rule is "that the testimony of a witness given on the preliminary examination of the accused is competent on the trial where the witness died in the meantime." *State v. Fleming,* 451 S.W.2d 119, 121 (Mo.1970); *see also State v. Kee,* 956 S.W.2d 298, 302 (Mo.App.1997)("[a]n exception [to confrontation] exists ... when a defendant had the opportunity to cross-examine an unavailable witness at a previous judicial proceeding...."). "Testimony given at a properly held preliminary hearing satisfies the requirements of the confrontation clause of the Sixth Amendment when the witness is unavailable to testify at trial." *State v. Griffin,* 848 S.W.2d 464, 470 (Mo. banc 1993). "[T]he inability of defense counsel to conduct the same cross-examination early in the pretrial process as would be conducted at trial does not mean that the testimony lacks sufficient reliability to admit it for trial." *Id.*

4. The Wilhelmina Club was the bar where Leonard Steward was employed as a bartender.

■ The record in the instant matter reveals the Defendant's defense counsel engaged in a vigorous cross-examination of Gary Goldsmith during the preliminary hearing. *See Fleming,* 451 S.W.2d at 121; *Kee,* 956 S.W.2d at 302. The record also reveals that at the time of Defendant's trial, Gary Goldsmith was unavailable to personally testify because of his death. *See id.; see also California v. Green,* 399 U.S. 149, 165, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489 (1970) (where a witness has died or is otherwise unavailable the Confrontation Clause is not violated by admitting preliminary hearing testimony in evidence where the right of cross-examination at the preliminary hearing provided substantial compliance with the purposes behind the confrontation requirement and as long as the declarant's inability to give live testimony at trial is no way the fault of the State). Gary Goldsmith's preliminary hearing testimony was therefore properly admitted in evidence in this case. Subpoint denied.

### The Trial Court's Instruction

■ Before introducing the preliminary hearing testimony of Gary Goldsmith, the trial court read an instruction to the jury to explain the circumstances of his testimony and to help the jury understand what was being admitted as evidence. The instruction was:

A witness named Gary Goldsmith testified at an earlier stage of this case. He had since died of an illness, and is not available in person to testify today.

The law permits his testimony at the prior proceeding to be presented to the jury, and treated by you as if it were live today.

The reader of his testimony is an officer of this court, entirely unrelated to any of the parties or events herein, and unacquainted with the deceased witness.

[The prosecutor] will read the questions which he put to the witness at that hearing. [Defendant's attorney] will read the questions put to Mr. Goldsmith by an attorney named Randel Miller, who appeared as [Defendant's] attorney.

Mr. Goldsmith's testimony, as transcribed by a court reporter, will be read by Darron Wheeler. You are cautioned that it is the testimony of Mr. Goldsmith that the Court is admitting into evidence, and not the demeanor, manner, or inflections of this reader.

The reader has been instructed to read the testimony of Mr. Goldsmith in as neutral a fashion as possible, and the appearance of the reader while testifying is irrelevant.

Defendant contends that the second paragraph of the instruction was a prejudicial, misstatement of law. Defendant asserts that the jury would have been able to observe Gary Goldsmith's demeanor if the testimony were live, and that the instruction gave the testimony an imprimatur of reliability that the transcript did not possess.

■ There was no pattern instruction for the trial court to follow in this case. In the absence of a pattern instruction, the trial court must instruct the jury consistent with the substantive law. *See State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997). A faulty instruction is grounds for reversal if the defendant has been prejudiced by the application of the instruction. *Id.* at 523. Because the instruction cautioned the jury that only the testimony, and not the demeanor of the reader, was being admitted in evidence, we find the instruction was consistent with the substantive law and that Defendant was not prejudiced by the application of this instruction. *See id.* Subpoint denied.

### Allegations Regarding Unqualified Defense Attorney

■ Defendant also argues in his first point that the trial court erred in admitting the preliminary hearing transcript from the preliminary hearing on January 8, 1996, because he was represented by counsel not licensed to practice law in Missouri.

Defendant's counsel, Randy Miller, was licensed to practice law in Arkansas but did not comply with Rule 9.03, Missouri Court

Rules (1996), before appearing at the preliminary hearing.[5]

At a pre-trial proceeding, the trial court expressed the dilemma of balancing the need for Defendant to have counsel of his choice against the requirement of complying with Rule 9.03, Missouri Court Rules (1996), and being represented by competent counsel. The trial court asked questions of defense counsel and determined that he was licensed to practice law in the State of Arkansas, that he had previously tried five murder trials to a jury, that he was licensed in 1983, that he had worked for the Attorney General's office handling habeas appeals in death-penalty cases, but that he had not tried a capital case in the State of Missouri.

The defense counsel explained that he had known Defendant for several years, and that Defendant was initially charged in Arkansas and he was paid to represent Defendant in the charge in Arkansas. Near the time the State of Arkansas decided to not charge Defendant with conspiracy to commit murder, the State of Missouri decided to file murder charges against Defendant. Defense counsel continued to represent Defendant because, as he stated, he "had worked on the other case. [He] had met many of the witnesses, [and] ... understood the facts of what had happened...."

Defense counsel also expressed the belief that Defendant would not get "as good a representation from someone here [in Missouri] that didn't know the characters, 'cause most of these events occurred in Arkansas." He did contact an attorney in Missouri to act as local counsel, [who entered his appearance on July 27, 1995, but subsequently was allowed to withdraw on May 23, 1996, after the preliminary hearing but before trial].

Additionally, defense counsel stated that he could not comply with Rule 9.03, Missouri Court Rules (1996), because he could not afford to hire local counsel, as he was handling this case on a *pro bono* basis.

The resolution that day, July 24, 1996, was that Mr. Miller would no longer represent Defendant, and Defendant submitted an application for appointment of a public defender. At the trial of this case, the trial court made a finding that Defendant was represented by counsel Randy Miller at the time of the preliminary hearing.

"[M]ere noncompliance with the filing and formal entry of appearance of local counsel requirements of Rule 9.03 does not constitute constitutional error. Constitutional error is error which substantially deprives one of the right to a fair hearing." *Stott v. State*, 771 S.W.2d 841, 843 (Mo.App.1989). In this case, counsel from Arkansas was an individual who had passed a bar examination and was licensed to practice law in Arkansas, practiced criminal law in Arkansas, was familiar with Defendant and the circumstances surrounding the murder, and was someone Defendant had chosen to represent him.

Additionally, at the time of the preliminary hearing, counsel from Arkansas was in substantial compliance with Rule 9.03, Missouri Court Rules (1996), as local counsel had filed an appearance in the case and was serving as co-counsel. It was only at a later date that local counsel withdrew from the case. At the preliminary hearing, counsel conducted cross-examination of the witness sufficient to afford Defendant the constitutional right of confrontation. Defendant was not prejudiced from representation of counsel of his choosing. Subpoint denied.

### *Prior, Unsworn Taped Statements of Gary Goldsmith made to Law Enforcement Officers*

Defendant also claims error in the trial court's admission in evidence of two taped,

---

5. In pertinent part, Rule 9.03, Missouri Court Rules (1996) provided that:

Any attorney, whether or not a member of The Missouri Bar, ... who is a member in good standing of the bar of any court of record ... may be permitted to appear and participate in a particular case in any court of this state under the following conditions: The visiting attorney shall file with his initial pleading a statement identifying every court of which he is a member of the bar and certifying that neither he nor any member of his firm is under suspension or disbarment by any such court. The statement shall also designate some member of The Missouri Bar having an office within the State of Missouri as associate counsel. Such designated attorney shall enter his appearance as an attorney of record....

unsworn statements of Gary Goldsmith made to law enforcement officers (State's Exhibits 6 and 7).

On April 5, 1995, Gary Goldsmith was taken to the police station by Defendant where Gary Goldsmith made a "confession" to law enforcement officers wherein he said that he killed Terri Bell. This "confession" was preserved on a tape recording and was identified at trial as State's Exhibit 6. However, the officers did not believe Gary Goldsmith's confession. The officers told Gary Goldsmith that he was free to leave the police station. Gary Goldsmith did not want to leave the police station, however, because he was in fear for his life due to threats he received from Defendant. Gary Goldsmith then changed his story and, *inter alia*, told the officers that Defendant killed Terri Bell. Gary Goldsmith's second statement to police was preserved on a second tape recording and was identified at trial as State's Exhibit 7.

Defendant argues that the introduction of State's Exhibit 7 violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution. "The Confrontation Clause of the Sixth Amendment gives the accused the right 'to be confronted with the witnesses against him.' This has long been read as securing an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988). A "[d]efendant's Sixth Amendment right to confront a witness is applicable to all criminal proceedings in state courts under the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965)." *State v. Ivicsics*, 604 S.W.2d 773, 778–79 (Mo.App. 1980). "The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." *State v. Schaal*, 806 S.W.2d 659, 662 (Mo. banc 1991).

In the instant matter, Gary Goldsmith's preliminary hearing testimony was read to the jury from the transcript. After such testimony was completed, the State introduced in evidence, over Defendant's objection, the two taped statements that Gary Goldsmith made to law enforcement officers. The two taped statements were played for the jury.

The State introduced Gary Goldsmith's taped statements (State's Exhibits 6 & 7) to show the jury that Gary Goldsmith's preliminary hearing testimony was inconsistent with his earlier, taped statements made to law enforcement officers on April 5, 1995. The statement that Gary Goldsmith made to the officers (State's Exhibit 7) unequivocally implicated Defendant in murdering Terri Bell. In his preliminary hearing testimony, while Gary Goldsmith admitted that he made the recorded statements to law enforcement officers, Gary Goldsmith otherwise gave vague and ambiguous answers to most of the questions posed to him regarding Defendant's involvement in murdering Terri Bell.

Although the tapes themselves were not played nor admitted in evidence during the preliminary hearing, Gary Goldsmith was questioned by the State *and cross-examined by defense counsel* regarding the substance and contents of his tape-recorded statements to law enforcement officers wherein he identified Defendant as Terri Bell's assailant.[6] Thus, even before the tapes were played for the jury during Defendant's trial, the preliminary hearing testimony from Gary Goldsmith revealed to the jury the apparent inconsistencies between his preliminary hearing testimony and his second taped statement made to law enforcement officers (State's Exhibit 7).

In Missouri, our legislature has enacted a statute which provides, "[n]otwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be

**6.** Concerning the Confrontation Clause, we observe that the United States Supreme Court has held that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose ... infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Owens*, 484 U.S. at 558, 108 S.Ct. at 842.

received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." § 491.074; *see State v. Blankenship*, 830 S.W.2d 1, 11 (Mo. banc 1992); *State v. Archuleta*, 955 S.W.2d 12, 16 (Mo.App.1997); WILLIAM A. SCHROEDER, MO. PRACTICE (EVIDENCE) § 626.1, at 667 (West 1992).[7]

As soon as an inconsistency appears from a witness' testimony, prior inconsistent statements are subject to admission under section 491.074. *Archuleta*, 955 S.W.2d at 15 (citing *State v. Bowman*, 741 S.W.2d 10, 13–14 (Mo. banc 1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 60 (1988)). The foundation necessary for a prior inconsistent statement to be admissible is an "inquiry as to whether the witness made the statement, and whether the statement is true. Any requirement of additional foundation would dilute the effect of the statute." *Bowman*, 741 S.W.2d at 14; *see also* SCHROEDER, *supra*, at 669–72.

The relevant inquiry for this Court in the instant matter is, therefore, whether the State laid the proper foundation for the admission in evidence of Gary Goldsmith's tape-recorded statements to the law enforcement officers.[8] We answer this inquiry in the affirmative. This is because during the preliminary hearing, Gary Goldsmith testified that he indeed made two tape-recorded statements to the law enforcement officers, one of which clearly implicated Defendant in Terri Bell's homicide. The officers who took the statements also testified at trial that Gary Goldsmith made the statements and that his statements were consistent with the evidence previously obtained by the law enforcement officers that implicated Defendant

in Terri Bell's homicide. *See Archuleta*, 955 S.W.2d at 15.[9]

We also note that even though Gary Goldsmith admitted making the inconsistent statements to law enforcement officers during his preliminary hearing testimony, which was placed before the jury at trial, inasmuch as the inconsistent statements constitute substantive evidence under section 491.074, "the jury should have [the evidence] in the best form for judging its credibility." *Bowman*, 741 S.W.2d at 14. Further, inasmuch as Gary Goldsmith suggested in his preliminary hearing testimony that he was coerced by law enforcement officers into making the statements that implicated Defendant in Terri Bell's homicide, the tape-recorded statements better enabled the jury to resolve this claim. *See id.* (citing *State v. Foster*, 700 S.W.2d 440, 443 (Mo. banc 1985)). While we do not ignore that a defendant is entitled to protection against unnecessary and duplicative bolstering, the record in this matter demonstrates no abuse of trial court discretion in admitting Gary Goldsmith's tape-recorded statements. *See id.* (citing *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987)).

Under section 491.074, it was within the province of the jury in this matter to determine whether Gary Goldsmith was telling the truth in his tape-recorded statement, or whether his preliminary hearing testimony was true. *See id.*

Lastly, Defendant alludes to the preliminary hearing and taped "statements" containing "inaccuracies" and "numerous instances of inadmissible evidence." With regard to alleged "inaccuracies" we observe

---

7. "Until 1985, Missouri courts held that a witness' prior, out-of-court inconsistent statements could be admitted in evidence only to *impeach* and not as substantive evidence." *State v. Pierce*, 906 S.W.2d 729, 733 (emphasis added). "In *State v. Bowman*, 741 S.W.2d 10 (Mo. banc 1987), the Supreme Court of Missouri held that the use of § 491.074 does not violate the Right of Confrontation, in essence, declaring the statute and the use thereof, constitutional." *Id.*

8. Concerning the hearsay nature of Gary Goldsmith's tape-recorded statements, in *Owens*, the United States Supreme Court noted that the hearsay analysis and tests of "indicia of reliabili-

ty" or "particularized guarantees of trustworthiness" are generally not necessary, where, as here, a hearsay declarant was subjected to unrestricted cross-examination. *Owens*, 484 U.S. at 560, 108 S.Ct. at 843; *see also State v. Sutherland*, 939 S.W.2d 373, 378 (Mo. banc 1997).

9. "It is not necessary ... for the declarant to admit the truth of the statement in order to establish admissibility." *State v. Belk*, 759 S.W.2d 257, 259 (Mo.App.1988). Neither is it necessary "for the declarant, himself, to admit he made the statements if from his testimony and other evidence the fact that such statements were made is established." *Id.*

that a jury resolves questions of credibility and inconsistencies in the evidence. *State v. Gatewood*, 965 S.W.2d 852, 856 (Mo.App. 1998). Furthermore, the exact nature of these inaccuracies and instances of inadmissible evidence were not specified in Defendant's first point, as required by Rule 30.06(d).

 "A point written in violation of Rule 30.06(d) that cannot be understood without resorting to the transcript or argument section of the brief preserves nothing for appellate review." *State v. Higgins*, 852 S.W.2d 172, 175 (Mo.App.1993).

 We, nevertheless, review for plain error. *See* Rule 30.20, Missouri Court Rules (1998). We have perused defense counsel's objection at trial to the introduction of the transcript of the preliminary hearing and Gary Goldsmith's taped statements to law enforcement officers. No manifest injustice or miscarriage of justice resulted from the admission in evidence and the playing for the jury of either the transcript of Gary Goldsmith's testimony at Defendant's preliminary hearing or of the taped statements made by Gary Goldsmith. *See State v. Hutchison*, 957 S.W.2d 757, 761 (Mo. banc 1997). Point I is denied.

### III.

In his second point, Defendant contends that the trial court erred when it (a) sustained the State's objection to Defendant's attempt to elicit testimony from Michael Bryan regarding statements made to him by Terri Bell regarding a common attribute of the men who beat her while she was in Defendant's house on the day prior to her death; and (b) sustained the State's objection to Defendant's attempt to elicit testimony from Argel Morrow regarding statements made to him by Terri Bell explaining her reason for being in fear for her life.

 The trial court possesses broad discretion to determine the admissibility of evidence and testimony. *State v. Bowens*, 964 S.W.2d 232, 237 (Mo.App.1998). "There must be a clear showing of an abuse of discretion for an appellate court to interfere with a trial court's ruling on the admissibility

of evidence." *Id.* "The trial court is given discretion 'because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant.'" *Id.*

 In review of Defendant's first subpoint, we observe that Defendant attempted to elicit testimony from Michael Bryan regarding what Terri Bell said to him concerning the specific appearance of two of the men whom she said beat her while she was inside Defendant's residence on the day before her death. Previous to the State's objection to this testimony, Michael Bryan testified generally that Terri Bell said to him that she received a beating from several, armed men while inside Defendant's residence and that she believed Defendant would have protected her from the men but was unable to do so due to circumstances beyond his control. Michael Bryan also testified that Terri Bell "appeared to have what looked like a black eye and had some red spots on her in a few places, looked like her lips were kind of swelling up ... from being busted." He further stated that he assisted Terri Bell in moving some of her personal belongings into Defendant's residence on the day before her death.

The only detail which the trial court excluded from Michael Bryan's testimony was that he heard Terri Bell say to him that two of the men who beat her were wearing "badges" and that Defendant offered to be her "bodyguard." The trial court sustained the State's objection to this specific, proffered testimony from Michael Bryan because it "would have involved the possibility of the defendant indirectly testifying, and also would have had hearsay on hearsay ... and would have brought in material which might be prejudicial, confusing, or misleading to the jury."

Notably, Defendant does not explain the significance of the "badges." Instead, he avers that the exclusion of this testimony prohibited him from "offering a complete picture of the situation." We disagree. Even without the excluded testimony concerning "badges," we believe that the jury was able to compose a complete picture of the situation surrounding Terri Bell's physical abuse. Additionally, Michael Bryan's testimony

showed that Terri Bell moved into Defendant's residence subsequent to her beating, believing that Defendant would protect her from future, perceived harm. We find no abuse of trial court discretion in excluding the complained of testimony of Michael Bryan. *See Bowens*, 964 S.W.2d at 237. In light of the foregoing testimony of Michael Bryan that was allowed to be admitted at trial, we also fail to discern any prejudice from the purported error in refusing to allow Michael Bryan to testify that Terri Bell said to him that two of the men who beat her were wearing badges and that Defendant offered to be her bodyguard. "Only prejudicial error is reversible error." *State v. Wells*, 940 S.W.2d 30, 34 (Mo.App.1997) (no prejudicial, reversible error where trial court excluded hearsay testimony from a police officer concerning a victim's uncertainty in identifying defendant). Subpoint denied.

■ In his second subpoint, Defendant contends that the trial court erred when it sustained the State's objection to his attempt to elicit testimony from Argel Morrow regarding statements he heard Terri Bell make explaining her reason for her fear. As noted, we review the trial court's exclusion of evidence and testimony for abuse of discretion. *See Bowens*, 964 S.W.2d at 237.

Defendant sought to present testimony from Argel Morrow, wherein he would have specifically testified that he overheard Terri Bell state that she was afraid of Marcus Torres and, most importantly, that Marcus Torres already "hunted her down" once before.[10] This testimony was designed to show Terri Bell's need for Defendant's protection and her reason for moving into Defendant's residence. The trial court excluded this particular testimony from Argel Morrow because it was speculative and not "sufficiently founded" or "sufficiently clear" to present to the jury.

Our review of the record, however, reveals that Argel Morrow was permitted to testify before the jury that he understood that Defendant was going to "protect" Terri Bell and that Defendant was going to take her to "the sheriff's department at Kennett." Defen-

dant's counsel was also permitted to ask Argel Morrow, "From whom was the agreement that [Defendant] would protect her?" Argel Morrow answered, "She was *afraid this Marcus [Torres] would find her.*" (emphasis added).

In light of the foregoing testimony, we are left to conclude that Defendant was able to present sufficient testimony to the jury to support his theory that he was going to protect Terri Bell from her perceived physical harm from Marcus Torres and that his actions in that regard were inconsistent with him wanting to murder Terri Bell. "A jury may accept part of a witness's testimony while disbelieving other portions and may also draw certain inferences from a witness's testimony, but reject others." *State v. Howard*, 949 S.W.2d 177, 181 (Mo.App.1997).

Defendant's contention regarding trial court error relating to the exclusion of testimony from Argel Morrow is without merit and is otherwise refuted by the record. Thus, we discern no trial court error, prejudicial or otherwise. *See Wells*, 940 S.W.2d at 34. Point II is denied.

**IV.**

■ In his final point, Defendant contends that the trial court abused its discretion in allowing the state to elicit testimony from Argel Morrow regarding the purpose of the trip from Missouri to Paragould, Arkansas, because such testimony was inadmissible hearsay. As previously noted, the trial court possesses broad discretion to determine the admissibility of testimony. *Bowens*, 964 S.W.2d at 237.

Argel Morrow was asked on direct examination by the State, "What did Leonard [Steward] indicate to you was the purpose for your going to [Defendant's] house to talk to Terri Bell?" Argel Morrow responded, "She was supposed to tell us who had shot Mandel [Steward]." This was the sum of the testimony that Defendant asserts in his point relied on that the trial court abused its discretion in allowing the jury to hear.

Following the foregoing testimony, however, we note that Argel Morrow also testified

---

**10.** Recall that Terri Bell told Defendant that Marcus Torres was the individual who killed

Mandel Steward.

that upon arriving at Defendant's residence he personally observed the events that transpired. He testified that he observed Defendant, Leonard Steward and Randall Steward each interrogate Terri Bell regarding the identity of the person who shot and killed Mandel Steward. When Terri Bell was uncooperative, Argel Morrow testified that he observed Defendant threaten Terri Bell with a hand gun and observed Leonard Steward and Randall Steward physically abuse her until she admitted that she was present when Mandel Steward was killed. She also revealed the name of the person who shot him.

Thus, in addition to Argel Morrow's testimony regarding statements made by Leonard Steward, *supra,* the purpose of the trip to Defendant's residence in Paragould, Arkansas, and the events that transpired after arriving, became apparent and was placed before the jury by testimony from Argel Morrow based upon his personal knowledge.

▮ Testimony from a witness based upon his or her personal knowledge is not hearsay where it is direct testimony as to facts about which the witness possesses personal knowledge. *State v. Quinn,* 594 S.W.2d 599, 603 (Mo. banc 1980). In any event, "a conviction will not be reversed because of improper admission of testimony which is not prejudicial to defendant." *State v. Leisure,* 796 S.W.2d 875, 879 (Mo. banc 1990). "The burden is on defendant to show both error and the resulting prejudice before reversal is merited. . . ." *Id.*

We fail to discern how the admission in evidence of the testimony of Argel Morrow regarding statements made to him indicating the *purpose* of the trip to Defendant's residence was prejudicial to Defendant, particularly in light of the fact that Argel Morrow testified in detail, without objection, to the events that transpired upon arriving at Defendant's residence. *See id.* Point III is denied.

The judgment is affirmed.

GARRISON, C.J., SHRUM, P.J., concur.