STATE of Missouri, Respondent,

v.

Doris Teresa HEARD, Appellant.

No. 55274.

Supreme Court of Missouri,
Division No. 1.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., James M. Reed, Asst. Atty. Gen., Jefferson City, for respondent.

Jerry D. Perryman, St. Louis, for appellant.

SEILER, Presiding Judge.

Defendant was charged with second degree murder of one Harold Dean Hendrix. Her defense was self defense. The jury found defendant guilty but was unable to agree upon the punishment, which was then set by the court at 10 years' imprisonment.

The shooting occurred in a bar at 5650 Delmar Boulevard in St. Louis. Defend-

ant was a barmaid there. No question is raised as to the sufficiency of the evidence to sustain the verdict. Therefore, it is not necessary to state the evidence beyond saying that Hendrix entered the bar, told defendant he was going "to beat her up when she got off from work", and then started to leave. Defendant, who had been drinking, called him back and started shooting, two shots striking deceased, who fell mortally wounded. There was no weapon found on deceased.

■ The first point which defendant urges is that the court erred in sustaining the state's objection to a question put to defendant as to what was her state of mind at the time she reached for the gun, and another question as to did she think that the deceased was going for his gun. The court sustained the state's objection that these questions called for a conclusion. The claimed error, however, was not preserved in the motion for new trial and, hence, the matter is not before us on appeal, Rule 27.20(a), V.A.M.R.; State v. Thompson (Mo.Sup.) 425 S.W.2d 80, 85; State v. Meiers (Mo.Sup.) 412 S.W.2d 478, 481.

■ Furthermore, defendant did get before the jury, without objection, her version of what happened: that the deceased, over a period of several weeks, had been forcing his attentions on her, both at work and at her apartment, and had flourished a gun at her; that on the day of the shooting, he came to the bar, threatened to beat her up and reached over the bar and hit her, breaking her nose. Then, according to the defendant, "He stepped back and went toward his pocket like this (indicating) and the first thing popped into my mind he was going for his pistol, and the only alternative I had was to reach behind the bar and get the pistol that was back there." She grabbed the pistol, turned around and fired. It is plain the sustaining of the objections did not actually keep defendant from getting her state of mind before the jury.

■ Defendant next contends that the court erred in permitting the circuit attorney to inquire on voir dire examination whether if defendant were found guilty under the law and the evidence of murder in the second degree, was there anyone on the panel who could not assess the punishment within the range set by law of from 10 years to life. One juror said she could not assess punishment in that range no matter what the evidence was, and the court sustained the state's challenge for cause. Defendant argues such an inquiry requires the prospective juror to commit himself to a future course of conduct predicated upon actions which have not occurred and which may not occur. However, there was no effort to commit the jury to any particular verdict or punishment (as contrasted to State v. Kiner (Mo.Sup.) 441 S.W.2d 720, where the jurors were asked whether if the state proved the guilt of defendant beyond a reasonable doubt, would they vote to find him guilty, and State v. Pinkston, 336 Mo. 614, 79 S.W.2d 1046, where the jurors were asked whether or not they would assess the death penalty), but only inquiry as to whether if there were a conviction the jury would assess punishment within the permissible range.

Defendant also argues that by its voir dire inquiries the state was emphasizing a false issue, because since the jury was to be instructed that if they found the defendant guilty but could not agree upon punishment, then the court would assess the punishment, there was no need to interrogate the jurors on this point; that the state thus gets an unfair advantage of eliminating jurors who will not commit themselves to fixing punishment, yet under the procedure approved in State v. Brown (Mo.Sup. banc) 443 S.W.2d 805, the jury is allowed "to abdicate this responsibility to the Court". Even before the Brown case, the possibility existed that the jury might decide guilt but not assess punishment. What to do in such a situation was expressly provided for by statute from an early date (see Sec. 546.440, RSMo 1969,

V.A.M.S. and former revisions) and by Rule 27.03 at present, which directs the court to assess punishment when the jury agrees on guilt, but not punishment. The Brown case holds it is permissible to inform the jury before they begin their deliberations that this is the way it will be handled, rather than reserving the matter until the need is shown by the jury's reporting it is unable to agree on punishment. It would not be proper for the state to put questions to a jury panel on the issue of punishment so framed as to insure a jury uncommonly disposed to convict, but we fail to see where that was done here. If the jury found defendant guilty, it was then up to the jury to try to agree on assessing punishment. The question under dispute went no further than to inquire whether there was any juror who could not live up to this responsibility (if the jury got to this point) by virtue of being unwilling to consider assessing punishment within the range prescribed by law. The contention is overruled.

■ Defendant's final contention is that after the motion for new trial had been overruled and during the formal sentencing of defendant, when counsel asked that defendant be given credit for her jail time, the following took place:

"THE COURT: Are you going to take an appeal?

MR. PERRYMAN: Yes, your Honor.

THE COURT: Then there will be no jail time allowed."

While it is true it is discretionary with the trial court whether to allow jail time prior to conviction, Sec. 546.615, subd. 1(2), RSMo 1969, V.A.M.S.; Drew v. State (Mo.Sup.) 458 S.W.2d 263, this discretion should not be exercised in an arbitrary or capricious way, yet that is what was done here. The reason the court denied credit for jail time was because defendant was going to take an appeal. This is an impermissible penalty to attach to defendant's right to appeal.

We cannot instruct the trial court how to exercise its sound discretion in determining whether or not to credit jail time, but we cannot permit the trial court to exercise such discretion arbitrarily, as is shown to be the case on the record here. The cause is therefore remanded for the trial court to exercise its sound discretion in determining whether or not defendant shall have credit for jail time and if the court in its sound discretion decides that she shall, then the sentence shall be amended accordingly, and if the court in its sound discretion decides that she shall not, then the sentence shall stand unchanged.

Judgment of conviction and sentence of 10 years affirmed, but the cause is remanded for the limited purpose of determination of the disposition of jail time in a manner not inconsistent with this opinion.

All of the Judges concur.