**STATE of Missouri,
Plaintiff–Respondent**

v.

**Asa MINOR, Defendant–Appellant.**

**No. 50906.**

Missouri Court of Appeals,
Eastern District,
Division Five.

June 7, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 29, 1988.

Application to Transfer Denied
Sept. 13, 1988.

Deborah Lambdin Stockhausen, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Paul LaRose, Deborah L. Ground, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Defendant, Asa Minor, was convicted by a jury of two counts of receiving stolen property over $150.00, a violation of § 570.080 RSMo 1986, and was sentenced as a persistent offender to two consecutive twelve year terms of imprisonment in 1985.

On appeal, defendant initially argued that the trial court erred in: (1) excluding defendant's testimony of statements made to him by a police informant; (2) overruling a motion to quash the venire panel because the State used all of its peremptory challenges to remove blacks from the venire in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and (3) denying defendant's request for a continuance.

On January 13, 1987, Division Four of this court issued an opinion denying all three of defendant's points on appeal. On the same day, however, the United States Supreme Court decided *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987), which gave retroactive effect to *Batson* thus making *Batson* applicable to defendant's 1985 conviction. Consequently, Division Four withdrew its opinion and remanded the case with instructions for the trial court to hold a hearing and to make findings of fact and conclusions of law on the *Batson* issue. On remand, the trial court found that the State's peremptory challenges were not invalid under *Batson*. On appeal defendant alleges that the trial court erred in this finding. We will initially address the two non-*Batson* points.

In 1983, the FBI, the Missouri Highway Patrol and the St. Louis City and County police cooperated to form Operation Recrush, an undercover operation designed to infiltrate the stolen car and car parts market. As part of the operation, Detective Rozelle, a St. Louis County police officer, posed as a retagger of stolen cars and car parts.[1] Detective Rozelle met appellant in June 1984 through Robert Marshall, a police informant. Thereafter, defendant and Rozelle spoke several more times about buying and selling stolen cars. These conversations were tape recorded by means of both wiretap and an on-body electronic recording device. Detective Rozelle would tell defendant he was "in the market" for a certain make of car. Defendant would then locate such a car, make arrangements to set up a purchase, have the car stolen, then sell it to Detective Rozelle a few hours after the theft. On July 18, 1984, Rozelle paid defendant $700.00 for a 1984 Cadillac. On August 16, 1984, Rozelle paid defendant $500.00 for a 1983 Buick. Rozelle tape recorded these transactions. Both cars had their ignitions punched out and were reported stolen by their owners.

Defendant's description of his association with Detective Rozelle was substantially different. Defendant testified that when Robert Marshall initially spoke with him, he did not mention stolen automobiles. Instead, defendant believed he was involved in a repossession operation for a finance company. He stated that Detective Rozelle would give him a list of cars to be repossessed and he would then give this list to Tommy Webb. When Mr. Webb had repossessed an automobile on the list, he would inform the defendant who would arrange for pickup and payment with Detective Rozelle. He asserted that he received commissions for the 1984 Cadillac and the 1983 Buick and that he did not know that the cars were stolen. His testimony also alleged that he was approached about stolen cars "later on."

---

1. Retagging is a method by which a stolen car is returned to the normal flow of commerce. The public serial number on the dash, and the secret serial number on the engine, transmission and frame are changed, after which a new title and VIN plates are acquired.

In his first point on appeal, defendant claims that the trial court erred in excluding as hearsay his testimony of statements made to him by the police informant. The alleged hearsay basically concerned statements made by Robert Marshall to defendant as to the nature and mechanics of the repossession operation. Defendant contends that the excluded statements were not hearsay because they were offered to show his state of mind at the time of his initial involvement with the informant and to explain his subsequent conduct, not to show the truth of the statement.

The excluded statements were not hearsay because they were not offered to show that Marshall was involved in a repossession operation but to show that defendant thought it was a repossession operation; the testimony was not an out-of-court statement offered to prove the truth of the matter asserted. *State v. Mallett*, 732 S.W.2d 527, 536 (Mo. banc 1987). Thus, the court did err in excluding the testimony, but the error does not require reversal. Any error in excluding testimony is harmless where testimony of similar import is subsequently introduced without objection. *State v. Overkamp*, 646 S.W.2d 733, 735–36 (Mo.1983); *State v. Foley*, 629 S.W.2d 401, 403 (Mo.App.1981). The record reveals that defendant testified he was told by the informant that he was repossessing cars; he passed along information to others that a finance company wanted cars repossessed; he only passed along messages about repossessing cars; he worked from a list of cars that he believed only included cars to be repossessed. Consequently, the jury was clearly informed of defendant's alleged belief that he was involved in a repossession operation. Because there is no prejudice, defendant's first point is denied.

Defendant also alleges error in the court's refusal to grant a continuance un-der Rule 25.16 pursuant to the State's non-compliance with a discovery request. Prior to trial, Defendant filed a discovery request under Rule 25.03 which, in part, requests any record of statements made by defendant. The police had recorded conversations with defendant over a period of two months, some of which applied to the present action and some to related actions in St. Louis County and federal court. The State gave defense counsel only those transcripts concerning the two St. Louis City counts. During her cross-examination of Detective Rozelle at trial, defense counsel inquired whether Rozelle had worn an electronic recording device at his initial meeting with defendant. When Detective Rozelle replied affirmatively, defense counsel stated that these tapes were never disclosed, she felt they might contain information supporting a defense of entrapment, and she requested a continuance. The State replied that, although they had only given defendant the tapes relating to the present charges, counsel was free to examine any tape in their possession. The judge overruled the request for a continuance.

The trial court has broad discretion in the granting or denying of sanctions for non-compliance with discovery rules, including continuances, and its decision will not be overturned unless there was an abuse of that discretion resulting in fundamental unfairness or substantially altering the outcome of the case. *State v. Johnson*, 702 S.W.2d 65, 73 (Mo. banc 1985); *State v. Stout*, 675 S.W.2d 931, 936 (Mo.App.1984). We cannot say that the trial judge's ruling prejudiced the defendant in any way. Defendant failed to show how the tape could have aided his case except to broadly assert that it might bolster his entrapment defense. The trial judge, however, denied the entrapment instruction on the grounds that entrapment was inconsistent with defendant's testimony that he believed he was involved in a legal repossession operation.[2]

**2.** Generally, a defendant may not claim entrapment if he denies commission of the crime. *State v. Johnson*, 728 S.W.2d 675, 679 (Mo.App. 1987); *State v. Williams*, 542 S.W.2d 3, 6 (Mo. App.1976). Minor was charged with receiving stolen property; one of the elements of this crime is receiving, retaining, or disposing "of property of another knowing that it has been stolen, or believing that it has been stolen." § 570.080.1 RSMo 1986. Minor, however, claimed that he believed the cars were repossessed, not stolen. Therefore, he denied com-

Defendant cannot be prejudiced by the lack of evidence to support a non-issue. Also, despite the State's express offer of availability, defendant has failed either to produce a transcript of the tape for this court or to direct us to any particular statement in the tape that could have aided him. Absent prejudice, this point is denied.

 Finally, we address defendant's *Batson* challenge. He claims that the court's findings of fact and conclusions of law were clearly erroneous because the prosecutor struck seven black jurors but did not challenge four similarly situated white jurors. *Batson* reaffirmed the prohibition against racial discrimination in jury selection, stating that a defendant who is tried by "a jury from whom members of his race have been purposefully excluded" is denied equal protection. 476 U.S. at 85, 106 S.Ct. at 1716. Under *Batson*, once a defendant has established a prima facie case of discriminatory peremptory strikes, the State must rebut that presumption by offering racially neutral explanations for its strikes, although these explanations need not rise to the level of a challenge for cause. 476 U.S. at 97, 106 S.Ct. at 1723. In fact, the prosecutor may be entitled to rely on his "hunches" about a venire member. *State v. Antwine*, 743 S.W.2d 51, 65 (Mo. banc 1987). One of the criteria for determining if an explanation is valid is the state's treatment of similarly situated white jurors. *Id.*

 The prosecutor struck four jurors partly because they or their relatives had been involved in criminal prosecutions. He felt that, because the case turned on the believability of police officers versus defendant's credibility, it would be unwise to retain jury members who might be prejudiced against police officers. Ernest Snipes had a brother-in-law who had been jailed for murder and drug trafficking and a son who was on probation. Anthony Allmon was a postal employee, allegedly an unfavorable juror to the State, and had a cousin who had been jailed five years prior to trial. Doris McGhee had been arrested twenty years ago and her daughter was on

mission of the crime and could not claim en-

probation at the time of trial. Maria Chatman had been charged for a peace disturbance. In addition, at age 23 she was the youngest person on the jury and the prosecutor believed an older jury was preferable. Sammie Carpenter was similarly stricken for his youth, age 28, and because he was unemployed. The prosecutor felt that Rosa McNeal was a strange person and he received the impression that her deceased son, who had a criminal record, had been killed by a police officer. At the post-trial hearing, the prosecutor admitted that he could not recall why he struck the alternate juror. However, since alternates were not used in this case, defendant could not have been prejudiced by an alternate strike. *State v. Sproling*, 752 S.W.2d 884 (E.D.Mo. 1988).

The trial court found that the State offered neutral explanations for its peremptory challenges and held that "the State's peremptory challenges were not based on or motivated by the race of the venire persons challenged or the defendant." Defense counsel, however, points to four white jurors who she claims were similarly situated. Catherine Roedner's brother and nephew had both been incarcerated as juveniles. Sal Indelicato's father, who had been dead for twenty years, had been convicted, but his two sons were police officers. Claire Reilly, a fifty four year old housewife, was not employed and had a son with a juvenile record. Wilma Walton's husband of thirty three years had been convicted of statutory rape prior to their marriage.

On review, we defer to the trial court's opportunity to view voir dire and to judge the prosecutor's credibility. *State v. Jones*, 748 S.W.2d 898 (E.D.Mo.1988); *State v. Brown*, 747 S.W.2d 261, 264 (Mo. App.1988). We will not disturb the finding of fact unless it is clearly erroneous. *State v. Antwine*, 743 S.W.2d at 66. A venire person's employment as a postal employee, *State v. Payton*, 747 S.W.2d 290, 293 (Mo. App.1988), relationship to the police as evinced by family members' criminal

trapment.

records, *id.; State v. Thomas,* 749 S.W.2d 11 (E.D.Mo.1988); *State v. Brown,* 747 S.W.2d 261, 262–63 (Mo.App.1988), and age, *State v. Jones,* 747 S.W.2d 229, 232 (Mo. App.1988); *Antwine,* 743 S.W.2d at 64, have all been identified as proper bases for a peremptory strike. In addition, the white jurors were not so similarly situated as to indicate that the prosecutor's explanations were pretextual. The relevant criminal activity was either more remote in time or less severe than that concerning the black jurors. Under these facts and our scope of review, we cannot hold that the trial judge's findings were clearly erroneous. Defendant's final point is denied.

Case affirmed.

SATZ, C.J., and SIMEONE, J., concur.