**James Randall SCHNELLE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 60406.**

Missouri Court of Appeals, Western District.

Jan. 31, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 2003.

Application for Transfer Denied May 27, 2003.

James Randall Schnelle, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

James Schnelle appeals the denial of his 29.15 motion after an evidentiary hearing. He raises five points on appeal. The first point is dispositive. Schnelle contends he received ineffective assistance of counsel because trial counsel failed to object to the striking of his entire direct testimony when he refused to answer a question on cross-examination concerning one of his prior criminal convictions. We find that the question dealt with a collateral matter (impeachment) and that counsel was ineffective for failing to object to the striking of the defendant's entire direct testimony. Counsel's deficiency was prejudicial because it deprived the jury of any direct testimony of Schnelle's defenses of self-defense and defense of property. Therefore, his convictions of assault in the first degree, assault in the second degree, knowingly burning, and tampering in the first degree are reversed and remanded for a new trial.

## Procedural History

This is the third time this case has been before this court. The State first tried Schnelle in June 1994. At that trial, the defendant was convicted of two counts of first degree assault, one count of knowingly burning, and one count of tampering. This court reversed the convictions because the record did not establish that he knowingly and intelligently waived his right to counsel when he represented himself at trial. *State v. Schnelle,* 924 S.W.2d 292 (Mo.App.1996).

At the new trial, counsel represented Schnelle. A Clay County jury convicted him of assault in the first degree, assault in the second degree, knowingly burning, and tampering in the first degree. This court affirmed the defendant's convictions. *State v. Schnelle,* 7 S.W.3d 447 (Mo.App. 1999). (*Schnelle II* ). Schnelle next filed a Motion to Vacate, Set Aside, or Correct Judgment and Sentence under Rule 29.15. After an evidentiary hearing, the trial

court denied his motion. This appeal follows.

This court discussed the evidence presented by the State in its opinion in *Schnelle II*, 7 S.W.3d at 448–49. The State presented evidence that the defendant and one of the victims, Debra Smith, had been living together in his home for over a year, despite an adult order of protection that required Ms. Smith not to enter the house or be near the defendant. Ms. Smith testified that, during their relationship, the defendant was frequently violent, typically if he had been drinking whiskey. About midnight on November 22, 1993, Ms. Smith returned to the defendant's house with her friend, Christina Lucas, after being gone for approximately four days. Ms. Smith entered the house while Ms. Lucas waited in the car.

Ms. Smith awoke the defendant who was sleeping on the couch. His breath smelled of alcohol. An argument ensued in which the defendant screamed at Ms. Smith, broke the kitchen table, and struck at her several times before she reached the front door and yelled for help. Ms. Lucas came to the door and attempted to intervene when the defendant threatened to again hit Ms. Smith. The defendant yelled at Ms. Lucas, asking who she was, and then struck her in the left eye with his fist, knocking her unconscious. When she came to, he hit her again and kicked her at least once while she was on the ground. Ms. Lucas then got up and ran to a neighbor's house to call the police.

At this point, the defendant chased Ms. Smith around the front yard, hitting and kicking her. They both fell to the ground, and the defendant grabbed a piece of wood the size of a fireplace log from a neighbor's woodpile and began swinging it at her. He was "just hitting [her] all over," striking "one blow after another." The defendant threatened to kill Smith.

The defendant went inside and retrieved what appeared to be a sledgehammer. Both women ran and hid across the street to wait for the police. When the defendant came back out, he yelled, "I love you baby, I love you, baby," and proceeded to knock out "virtually every piece of glass that was available to knock out" of Ms. Lucas's automobile. He then rolled the car down the driveway into a ditch across the street. He poured liquid into the car and set it on fire. An arson investigator testified that an accelerant, such as gasoline, had been poured into the passenger compartment of the car, and that the fire was of an incendiary nature. Several neighbors witnessed the car burning incident.

After the police arrived, they noticed both women had visible injuries. The women were transported by ambulance to the hospital. Ms. Lucas had a swollen, black eye, and a laceration above her eye that required four or five stitches. Ms. Smith was treated for multiple bruises and contusions, some of which were located on her head and upper extremities.

The defendant told the police he got into an argument with Ms. Smith after waking up and realizing who she was and that she was not his current girlfriend. He admitted to striking her, stating that he "kicked the shit out of her." He also admitted to hitting Ms. Lucas. He indicated that his actions were necessary in that he was "protecting his property." As to the car, he stated that he had broken out the windows, and pushed it into the ditch after it caught on fire. He eventually admitted to starting the fire and said, "I'd do it again if they come back."

At trial, Ms. Lucas testified that she did not think that the defendant was trying to kill her or cause her serious physical injury, but that he was trying to protect his

property. Ms. Smith testified, however, that she did believe that the defendant was attempting to kill her or to cause her serious physical injury.

The defendant also testified, but on cross-examination he refused to answer a question about his prior criminal record. As a result, his entire testimony was stricken from the record.

On direct appeal, Schnelle asked this court to reverse his convictions arguing that the trial court plainly erred in striking his trial testimony in its entirety, in that his direct testimony was necessary to refute portions of the State's case, and, therefore, he was denied the fundamental right to present his defense. 7 S.W.3d at 452. This court affirmed Schnelle's convictions because trial counsel waived any claim of error by agreeing that striking the defendant's entire testimony was the proper remedy. *Id.* at 455.[1] This court then gratuitously determined that there was no manifest injustice in his trial because the defense of self-defense was before the jury in the form of substantially similar testimony from the police officer who took Schnelle's statement at the time of arrest. *Id.* at 456.

### The Rule 29.15 Motion

Schnelle filed a Motion to Vacate, Set Aside or Correct the Judgment or Sentence in Clay County Circuit Court. He made several allegations, including that his trial counsel was ineffective. Counsel filed an amended motion including Claim (C) alleging that the defendant was denied his right to effective assistance of counsel because his counsel failed to object to the State's motion to strike his direct testimony and the court's order instructing the jury to disregard his entire testimony.

At the hearing, Schnelle presented the testimony of his trial counsel, the prosecutor, and himself. Defense counsel testified that he had represented Schnelle in three different cases. In addition to the underlying case in this appeal, he had represented him in a drug case. Counsel testified at a PCR hearing related to the drug case and, as a result of that PCR hearing, Schnelle was granted a new trial.

Trial counsel agreed that he did not argue to the trial judge that he could or should impose a lesser sanction than striking his entire testimony for Schnelle's refusal to answer a question about one of his prior criminal convictions. When asked if he had a "strategic reason for thinking it was alright for the judge to strike his testimony," counsel responded:

> Oh, absolutely not. No, I didn't. I mean, what I recall is he was asked on a couple of different occasions to answer a question, and then at that point, to the best of my recollection and, again, the transcript would be more clear than my memory, that Mr. Newberry made a motion that his testimony be stricken, is what I recall.

John Newberry, the prosecutor, did not give any testimony about his motion that the trial court strike the defendant's entire testimony or about defense counsel's response to his motion.

After the hearing, the circuit court noted there are various alternatives to striking all testimony when a witness in a criminal case, "as opposed to a defendant," refuses to answer questions that are intended to impeach the witness. The court determined, however, that "[n]one of those alternatives would have been appropriate" in Schnelle's situation. The court found, "When a defendant chooses to refuse to

---

1. There are serious questions about whether plain error review can be waived. *See State v.* *Wurtzberger,* 40 S.W.3d 893, 898 (Mo. banc 2001).

follow the law he is making a conscious choice, a choice that is completely within his control." The court indicated that Schnelle was given every opportunity to choose to follow the law and his refusal to follow the law was a "deliberate act." The court then concluded:

> In that situation, none of the alternatives that should be considered when witnesses refuse to testify would be appropriate. The proper remedy for Movant's deliberate choice not to follow the law was to order all of his testimony stricken. Had the state asked for a mistrial, the request would have gotten serious consideration. There was no objection that could have been made that should have been sustained to the court's action in striking Movant's testimony and instructing the jury to disregard it. Movant's trial counsel was not ineffective. No relief will be granted on ground (C).

The circuit court cited no case law to support its conclusion.

### Standard of Review

We are limited in our review to a determination of whether the motion court's findings of facts and conclusions of law were clearly erroneous. *Rousan v. State,* 48 S.W.3d 576, 581 (Mo. banc 2001). We will only find the motion court's findings of fact and conclusions of law clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *May v. State,* 921 S.W.2d 85, 86 (Mo.App. 1996).

### Points on Appeal

Schnelle raises five points on appeal. The first point is dispositive: He contends that the motion court erred in finding that he received effective assistance of counsel, because trial counsel failed to suggest an alternative to the striking of his testimony and failed to preserve error for appeal. He further contends that he was prejudiced because he was unable to present a defense.

The State claims that the court was not clearly erroneous in rejecting the appellant's claim that his trial attorney was ineffective in failing to suggest an alternative to striking the defendant's testimony when he refused to answer "certain questions" on cross-examination, because (1) at the time the incident occurred it was not clear what the appropriate remedy might have been, and (2) counsel's failure to suggest alternative remedies was not prejudicial, in any event, because the trial court would not have considered, and was not required to consider, other remedies, and because Schnelle's version of the incident was already before the jury through his statement to police.

### The *Strickland* Standard

The Supreme Court set out the standard for granting post-conviction relief based on allegations of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court held that the "benchmark" for judging whether counsel is ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* In order to meet this standard the movant must show by a preponderance of the evidence: (1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and (2) that counsel's deficient performance prejudiced the defense. *Id.* at 687–88.

### Analysis

Was Schnelle's trial counsel ineffective when he failed to object to or failed to

suggest an alternative to the striking of the defendant's testimony in its entirety after he refused to answer a question concerning the nature of a prior conviction?

### Schnelle's testimony and counsel's failure to object

■ Not surprisingly Schnelle's direct testimony at trial was different from that of the victims. His sole defense to the charges was that he was acting in defense of himself and of his property. He testified that Debra Smith lived in his house beginning in 1991 for over a year. At first, Schnelle and Smith had only a landlord and tenant relationship. The relationship later became intimate. The defendant testified that during the time Smith lived in his house, there were several instances when Smith assaulted him. As a result of one of the violent incidents in 1993, Smith was under an order of protection to have no contact with Schnelle. He also said that prior to November 22, 1993, he had reported to the police that his home had been burglarized on a couple of occasions.

Defendant was at his home on the evening November 22, 1993, and was sleeping on the couch in his living room. At around 12:30 A.M., Schnelle said he was awoken when a woman sat next to him and gave him a kiss. At first, he thought the woman was his girlfriend; however, he did not recognize the woman's voice as his girlfriend's. He soon realized that it was the voice of Smith. The defendant maintained that Smith was drunk. He screamed at Smith, and she ran into his closet. The two argued. The defendant said he attempted to call the police but was not able to correctly dial 911. According to Schnelle, Smith came out of the closet and reached for the phone and pleaded with him to not call the police. They fought for the phone. Smith eventually grabbed the phone and started hitting Schnelle with it. He testified that Smith hit him so many times with the phone that she broke a cast on his right arm and also broke the phone. As a result, the defendant struck Smith a couple of times.

Next, Schnelle indicated that his front door opened and he saw an individual standing in his doorway. He could not tell whether the person was a man or a woman but was only able to determine that the person was a "big individual." The defendant struck the person standing in the doorway (Christina Lucas). He was "scared for [his] life."

Schnelle chased Lucas and Smith outside, pursuing Smith. He said that he tried to grab hold of Smith because he was still trying to call the police to take her into custody. He knew that Smith was under an order of probation to not have any contact with him. He did not want Smith on his property.

He caught Smith and another struggle ensued with Smith. The defendant testified that Smith had a "chunk of wood" and was trying to strike him with it. He let Smith go after struggling with her and went back to his house.

As he went back, Schnelle noticed an old Buick with a trunk lid opened backed up to his front door. Based on his prior experiences with burglaries at his home, he had the impression that the women had just robbed him. The defendant approached the car and noticed it was running. The car was locked. He broke the driver's side window and reached in to take the keys out of the car. He saw there were no keys in the car. Schnelle thought the car had been hot-wired. Schnelle said he tried to rip the wires out of the steering column to stop the car from running so the car would be there when the police arrived, but he was unsuccessful.

Defendant turned away from the car for a moment, and when he looked back, the car was smoking. He went inside his house. Outside, the car continued to run. The defendant went back outside and decided to move the vehicle away from his house. He was afraid the vehicle would catch fire and the fire would spread to his house. He put the car in gear and the car slowly idled across the street and went into a ditch. Then, the car burst into flames. The defendant went back to his house and grabbed his dogs' water bucket from his garage. He brought the bucket back to the car and doused the fire with the water. He said the fire did not go out when this happened but seemed to get worse.

Schnelle's trial counsel did not ask him any questions on direct examination about his prior convictions. The defendant was tried as a prior offender. At the hearing to establish this status, Schnelle directly raised an issue as to whether a conviction in Kansas that occurred after the present charge but before the present trial was, in his words, "relevant." In apparent anticipation of Schnelle's viewpoint, the court, before cross-examination, informed the defendant that his lawyer would object to questions that were legally impermissible and it would be up to the court to decide what questions were permissible. The court informed the defendant there would be no slack just because one side felt strongly about their position, and admissibility of evidence would only be determined by the rules.

The State began its cross-examination by asking the defendant, "And when was the first time you told the story that you told yesterday?" At a bench conference, the court asked Schnelle's attorney, "Why aren't you objecting to that question?" Counsel responded, "There's——I—— I'd——I'd say it's not necessarily objec-tionable." The court informed counsel that the question was too vague and was open-ended. The prosecutor complained vehemently about the court's objecting to the question and sustaining its own objection.

Next, during cross-examination by the State, the State asked Schnelle if he had "any prior convictions." The defendant answered, "I refuse to answer on the grounds that the answer may incriminate me. I would like to extend my Fifth Amendment right that misdemeanors are not part of this courtroom." Schnelle also asked whether he was subject to examination about municipal court matters. The prosecutor further made several unsuccessful attempts as the defendant either asked for clarification of the questions or explanations as to what prior convictions were proper. During most of these exchanges between Schnelle and the prosecutor or court, his defense counsel remained silent. The prosecutor asked that all of Schnelle's testimony be stricken from the record. The following discussion was held:

THE COURT: His request is what I should do if he won't answer that question. I should direct the jury not to consider any of his testimony and have him step down.

PROSECUTOR: That would be my request, Judge.

THE COURT: It seems like I should give you the opportunity to speak with him before I do that so you can counsel him.

DEFENSE COUNSEL: Judge, I'll bring it to his attention and counsel him accordingly.

THE COURT: And I think I want to make it known to him what I'm getting ready to do if he maintains his position before the jury comes back in.

The court then addressed the defendant directly. The court informed Schnelle that "the remedy the Prosecutor has asked for is an appropriate remedy if you persist in your refusal to answer questions that are ... appropriate." The court also informed the defendant that the prosecutor could ask him about his prior convictions, excluding traffic offenses.

Cross-examination continued. The prosecutor asked Schnelle if he had any prior felony or misdemeanor state or federal convictions. He responded, "Yes." Next, the prosecutor asked, "How many do you have, sir?" Schnelle answered, "As a combination, I would say twenty." The defendant agreed that he had pleaded guilty to a Missouri felony offense in 1967. He agreed that he pleaded guilty to another Missouri felony in 1968.[2] The prosecutor asked the defendant if he had any felony or misdemeanor convictions in Kansas. Schnelle responded, "Yes." The prosecutor asked, "And when did you plead guilty to those or were found guilty of those offenses, and what were those offenses?" Schnelle answered, "I refuse to answer on the grounds that the answer may incriminate me. It has nothing to do with this matter before the Court, and it was a matter that was after ... the case that I'm charged with." The prosecutor repeated his request that the court strike the defendant's testimony in its entirety.

The following discussion was held at a bench conference:

> THE COURT: I propose to say to Mr. Schnelle in the presence of the jury that this is a question that is permissible under our rules and that if he does not answer the question then I should grant the Prosecutor's requested relief by having him step down and testify no further.

And I would direct the jury to disregard all of his testimony. If you see that I should do it some other way or you have any other request of me before I do that, or you suggest some alternative form, I'll listen. Do you see any better way to do it?"

> DEFENSE COUNSEL: Judge, I understand the rule. I mean the rule is clear that if he refuses to answer questions on cross-examination, that is the relief that is available to the State. Judge, I would ask that you give me the opportunity to talk—
>
> THE COURT: We can't keep taking ten-minute recesses to have you explain it to him.
>
> DEFENSE COUNSEL: I understand, Your Honor.
>
> THE COURT: Okay, I'm going to do what I suggested.
>
> DEFENSE COUNSEL: Okay.

The court then informed the defendant that if he refused to answer the question the prosecutor's requested relief that the jury be instructed to disregard all of his testimony would be granted. Schnelle responded he understood and he wished to continue to refuse to answer the question. The court asked the defendant to step down from the witness stand and instructed the jury to not consider any of his testimony. In his closing argument, the prosecutor reminded the jury that it could not consider Schnelle's testimony:

> The evidence has all been concluded for you, what you heard from that witness stand, except what Mr. Schnelle said from that witness stand. That is not evidence. It's been stricken from the record. It does not exist. You cannot consider it.

---

**2.** These are the convictions that were used earlier to establish his status as a prior offender.

### Reasonableness of Counsel's Conduct

Under the first prong of *Strickland*, the movant must show "that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. To do this, the movant must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment, and the "court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." *Id.* at 690, 104 S.Ct. 2052. In addition, in order to satisfy the first prong, movant must overcome the presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998).

Here, Schnelle argues that his trial counsel was ineffective when upon the prosecutor's motion to strike Schnelle's entire testimony, trial counsel responded, "Judge, I understand the rule, I mean the rule is clear that if he refuses to answer questions on cross-examination that is the relief that is available to the State." The prosecutor moved to strike his testimony because the defendant refused to answer the State's question concerning the identity of the offense for which he had been convicted in Kansas. Prior to his refusal, Schnelle testified that he had twenty prior convictions. He admitted that he had two prior felony convictions in Missouri, one in 1967 and one in 1968. He also admitted that he had been convicted of a crime in Kansas.

On direct appeal, this court determined that the defendant refused to answer a collateral question concerning a prior felony conviction. "However, we conclude that we need not decide whether striking the entire testimony constituted error because trial counsel waived any claim of error by agreeing that striking the entire testimony was the proper remedy." *Schnelle*, 7 S.W.3d at 455. This court went on to observe that, even if it reviewed the case for plain error, there was no manifest injustice because defendant's theory of self-defense and defense of property was presented by testimony from the police officer who took the defendant's statement at the time of arrest. *Id.* at 456.

Now Schnelle cites *State v. Blair*, 638 S.W.2d 739, 754 (Mo. banc 1982), for his contention that an appropriate sanction for his refusal to testify would have been for the court to instruct the jury that it could consider the witness's refusal to answer in determining the weight to given his testimony. The rule in *Blair* derives from the Second Circuit's decision in *United States v. Cardillo*, 316 F.2d 606, 613 (2d Cir. 1963). In *Blair*, the Missouri Supreme Court found that the remedy for refusal to respond to questions on cross-examination should be analyzed pursuant to three categories:

> The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which, the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight ascribed to such testimony arose.

638 S.W.2d at 754 (quoting *Cardillo*, 316 F.2d at 613).

Although *Blair* addresses the court's remedies where a State's witness testified in the case-in-chief but then refused to answer questions on cross-examination, Schnelle argues that the right to testify at one's own trial is just as fundamental as the right to cross-examine an adverse witness. He cites *Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), to support this contention. In *Rock,* the United States Supreme Court discussed a defendant's right to call witnesses, including himself, under the Fourteenth Amendment's Due Process Clause, the Sixth Amendment Compulsory Process Clause, and as a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. *Id.* at 51–52, 107 S.Ct. 2704. "In fact, the most important witness for the defense in many criminal cases is the defendant himself." *Id.* at 52, 107 S.Ct. 2704.

Indeed, in *State v. Brown,* 549 S.W.2d 336, 343 (Mo. banc 1977), the Supreme Court reasoned that courts must be aware of a defendant's right to confront and cross-examine prosecution witnesses, and "[b]y the same token, courts must also be acutely aware of the equally important constitutional right of a defendant in a criminal case to call witnesses in his defense and to have the jury consider their testimony." 549 S.W.2d at 343. The *Brown* case involved a robbery committed by three individuals. One of the participants, James Moore, pleaded guilty. Mr. Brown pleaded not guilty. At Mr. Brown's trial for the robbery, he presented the testimony of Moore who testified that it was not Mr. Brown who was a participant in the robbery, but a man named John Green. During cross-examination by the State, Moore refused to identify the third party to the robbery. The Court struck the defense witness' entire testimony upon motion by the State. The Supreme Court reversed Mr. Brown's convic-

tion holding that the trial court abused its discretion by striking Moore's testimony. The Court indicated that Moore's testimony, if believed by the jury, operated as a complete defense. *Id.* at 346. The Court indicated that the testimony was stricken only because the witness declined to identify another person whose identity was known to the police and the prosecution, and who had already been identified in testimony before the jury by police officers. The Court, however, distinguished nonparty defense witnesses from the defendant himself by indicating that a trial court has less discretion to strike the testimony of a defense witness than the testimony of the defendant himself when the witness refuses to answer material questions on cross-examination. *Id.*

■ *Brown* does not preclude defendant from prevailing in this action and could have been used to argue that Schnelle's entire testimony should not have been stricken or that less drastic relief was available. The *Brown* court distinguished "nonparty defense witnesses" from the defendant himself because when a defendant refuses to answer a question, it is a deliberate act of the defendant himself. 549 S.W.2d at 344. It is important to note, however, that Schnelle refused to answer only a collateral question in this case and not a material question. The Ninth Circuit has set forth a well-established rule that a court may only apply the extreme sanction of striking a witness's entire testimony "when the question asked pertains to matters directly affecting the witness's testimony; the judge may not use the sanction when the privileged answer pertains to a collateral matter." *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1280 (9th Cir.1992); *see also United States v. Esparsen,* 930 F.2d 1461, 1469 (10th Cir. 1991). This principle seems entirely con-

sistent with our Supreme Court's statements in *Blair,* supra.

In *Schnelle II,* this court stopped short of deciding whether striking Schnelle's entire testimony constituted error in the instant case on direct appeal because "trial counsel waived any claim of error by agreeing that striking the entire testimony was the proper remedy." 7 S.W.3d at 455.

A review of the case law indicates that it was far from "clear," as trial counsel conceded to the court, that Schnelle's refusal to answer a cross-examination question concerning the nature of a prior conviction warranted the striking of his entire testimony. In fact, this court noted in *Schnelle II,* "We have been unable to find any Missouri cases where the *defendant,* as opposed to a state's witness, refuses to respond to proper questions by the prosecutor." *Id.* at 453 (emphasis in original). In fact, the State in this case maintains that "the law as it existed at the time of the appellant's trial was, and remains, unclear as to the proper remedy."

It is inconceivable why an advocate would concede to the striking of his client's entire testimony when the case law is not "clear," and when his client's sole defense must succeed or fail upon his own testimony. This is especially difficult to understand when the existing case law supports an argument that his client's testimony should not be stricken in its entirety because the question he is refusing to answer is of such a collateral nature that striking his entire testimony would not be the proper remedy. *Blair,* supra.

Yet, trial counsel made no argument that under *Blair, Brown,* or the Sixth and Fourteenth Amendments of the United States Constitution that it would be improper for the trial court to strike his client's entire testimony. ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, (citations omitted) or the Compulsory Process or Confrontation clauses of the Sixth Amendment, (citations omitted) the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). Nor did he argue that there were less drastic means of relief available to the court.

In essence, the State argues that counsel could not be deemed ineffective because any objection would have been meritless given the discretion granted a trial judge in the management of evidence issues. The concept of discretion is at once slippery and hard to categorize and yet fundamentally at the core of both a just and efficient judicial system. Legal commentators generally agree that it is a reasoned choice between two or more reasonable alternatives, but depart consensus when trying to categorize different types and degrees of discretion. At its central core, discretion is fluid and contextual. For example, the discretion to set aside a default judgment is broader than the discretion to deny a motion to set aside, *Harris v. Mitchell Transport, Inc.,* 812 S.W.2d 183, 184 (Mo.App.1991); the discretion is limited to prevent impeachment of a witness with a prior inconsistent statement, *Aliff v. Cody,* 26 S.W.3d 309, 320 (Mo.App.2000). Some discretion is virtually absolute and unreviewable (e.g., grant of a continuance or motion for mistrial); by contrast, the denial of a continuance is rarely subject to review and is widely discretionary; the denial of a motion for mistrial would be subject to yet another level of discretion.

And, likewise, with the present issue, the courts in *Brown* and other similar cases have recognized, for example, that the discretion to strike the testimony of a non-cooperating witness varies depending

upon whether the witness is the State's on direct, a state witness on cross examination, or a defense non-party witness. *See Brown*, 549 S.W.2d at 346. *Brown* did not suggest, however, that a trial court has absolute discretion to strike the testimony of a non-cooperating witness. In our view, the appropriate standard remains abuse of discretion, taking into consideration that the non-cooperation is in the hands of the defendant and may often even approach contemptuous behavior.

The question remains, however, as to what factors the trial court should consider when considering whether a request to strike the testimony of a defendant who refuses to answer a question on cross-examination. There is no logical reason why the court should not consider the same factors outlined in *Blair*, 638 S.W.2d at 754. Schnelle did not refuse to answer any questions concerning the offenses for which he was being tried. The State concedes that the refusal dealt with collateral impeachment matters. Moreover, Schnelle did not refuse to answer all impeachment questions about his prior criminal convictions. He admitted to numerous prior criminal convictions. In fact, he admitted to the Kansas conviction in question, refusing only to answer the properly asked detail about the nature of the conviction. However misguided, wrong, and even contemptuous his refusal might have been, it was very limited in scope as to a purely collateral matter. Implicit in the categorization system discussed in *Blair* is consideration by the trial court of the relative impact of witness non-cooperation on the two parties. In other words, the impact of the most drastic sanction (striking all testimony) must be weighed against the harm done to the State or defendant by the refusal of the witness to answer. Necessarily, that weighing process will be influenced by the constitutional right of the accused to cross-examine and present witnesses including himself. Unavoidably, that evaluation must also consider the nature and potential effect of the testimony to be potentially stricken (for e.g., testimony by a defense witness that the defendant was not involved in the crime, *Brown*, 549 S.W.2d at 346).

A reasonably competent attorney under the circumstances would have made *some* argument that his client's testimony should not be stricken in its entirety. Not only was there supportive case law for such an argument, but the State's case was not damaged by Schnelle's refusal to answer its question about the Kansas conviction. Trial counsel did not merely acquiesce in the court's sanction of Schnelle but invited the action by stating that there was no less drastic remedy available. But, in fact and law, there were less drastic remedies. It seems likely that the prosecutor already had a record of the conviction and could have asked specifically about the nature of the conviction. If Schnelle continued to refuse and the prior record was in proper form, the court could have instructed the jury to consider the Kansas conviction to be admitted. Additionally, the prosecutor could have introduced the record of that conviction in rebuttal.

 Decisions about whether or when to make objections at trial are left to the judgment of counsel. *State v. Suarez*, 867 S.W.2d 583, 587 (Mo.App.1993). However, failing to object can establish ineffective assistance of counsel if it resulted in a substantial deprivation of the accused's right to a fair trial. *Id.* Movant must show that counsel's overall performance fell short of established norms and that this incompetence probably affected the result. *Id.* at 587–88.

In the instant case, not only did trial counsel fail to object or make an argument, trial counsel conceded to the State's

motion to strike Schnelle's entire testimony. Trial counsel's performance fell short of the established norm.

## Prejudice

■ In regard to the second prong of *Strickland,* the Supreme Court said that an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691, 104 S.Ct. 2052. A movant must show that counsel's errors resulted in prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

■ Both parties in this action cite *Deck v. State,* 68 S.W.3d 418, 426 (Mo. banc 2002), for the rule that a determination of no plain error on direct appeal does not equate to a finding of no prejudice under *Strickland.* Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative. *Deck,* 68 S.W.3d at 427 (citing *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo. banc 1999)). However, *Strickland* holds that an outcome-determinative test cannot be applied in a post-conviction setting. *Id.* "Therefore, the two tests are not equivalents." *Id.*

The Court went on to note that, "this theoretical difference in the two standards of review will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the *Strickland* test." *Id.* at 428, 104 S.Ct. 2052. The Court indicated that the

distinction in the standards of review is important because there are a small number of cases in which the application of the two tests will produce different results. *Id.*

Respondent argues that Schnelle's defense was already before the jury in the form of his statements to police, and, therefore, the striking of his entire testimony did not prejudice him. The State cites *State v. Heard,* 460 S.W.2d 570, 571 (Mo.1970), to support its contention that even if evidence relating to a defendant's defense is improperly excluded, no prejudice results if evidence of that defense is otherwise before the jury. However, in *Heard,* the evidence otherwise before the jury was the testimony of the defendant herself, not a police officer. The State also points to *State v. Neely,* 979 S.W.2d 552, 562 (Mo.App.1998); and, *State v. Minor,* 755 S.W.2d 318, 320 (Mo.App.1988), to support its argument that there is no prejudice if the evidence is otherwise before the jury. *Neely* does not stand for the proposition that the excluded testimony was already before the jury. The *Neely* court determined that only certain details of a witness' testimony were excluded, not the witness' entire testimony. *Id.* at 561. Because the defendant in *Neely* did not explain the significance of the excluded details, the court determined that the jury was able to compose a complete picture of the situation. *Id.*

In *Minor,* the trial court erred in excluding some of the defendant's testimony as hearsay, but the defendant himself testified before the jury to items of similar import without objection and, therefore, was not prejudiced. 755 S.W.2d at 320.

In *Schnelle II,* we did not conduct any plain error analysis because of our conclusion that Schnelle's trial counsel waived

plain error review.[3] As *Deck* makes clear, the prejudice standard, although still high, is lower when evaluating the ineffectiveness of counsel than when reviewing for plain error. 68 S.W.3d at 428. In the instant case, Schnelle was not able to personally present his defense at all, to present his own version of events in his own words to any extent when the court struck his entire testimony. Schnelle's testimony that he was afraid of Smith and Lucas, that he was afraid they were robbing him, and that Smith had assaulted him on prior occasions was crucial to his theory of self-defense. But for his trial counsel's error in conceding the State's motion to strike Schnelle's entire testimony, the outcome of the trial could probably have been different. That a police officer testified about Schnelle's statements to him cannot take away the reasonable probability that striking Schnelle's entire testimony affected the outcome of his case.

■ The State also argues that Schnelle's defense was presented to the jury in his trial counsel's opening statement. However, the State fails to recognize that opening statements are not evidence. The primary function of the opening statement is to inform both the court and the jury in a general way of the nature of the case and to outline the anticipated evidence and the significance of that evidence. *State v. Fleming,* 523 S.W.2d 849, 852 (Mo.App.1975). In the instant case, the trial court instructed the jury in instruction number two, "The opening statements of attorneys are not evidence."

Because Schnelle's theory of defense was self-defense and defense of property, the striking of his entire testimony was prejudicial and there is a reasonable prob-

ability that, but for his counsel's unprofessional errors, the result of the trial would have been different. The motion court's ruling that trial counsel was not ineffective, therefore, is clearly erroneous. Schnelle's convictions must be reversed.

JAMES M. SMART, JR., Presiding Judge, and ROBERT G. ULRICH, Judge, concur.

---

**3.** Although the opinion in *Schnelle II* states gratuitously that "[T]here was no manifest injustice," there is no discussion of prejudice; and the court clearly held that plain error review was waived by counsel's actions. 7 S.W.3d at 456.